REVISED JUNE 5, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2008

Charles R. Fulbruge III
Clerk

No. 06-60063

JOSE MARTINEZ

Petitioner

v.

MICHAEL B. MUKASEY, U.S. ATTORNEY GENERAL

Respondent

On Petition for Review of an Order
of the Board of Immigration Appeals

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

After Jose Martinez was convicted of bank fraud, in violation of 18 U.S.C. § 1344, the United States sought to remove him, pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). 8 U.S.C. § 1227(a)(2)(A)(iii). Ruling the bank-fraud conviction constitutes an aggravated felony, the immigration judge (IJ) sustained the removability charge and denied Martinez statutory eligibility for a waiver of inadmissibility. Both on direct appeal and in denying a joint motion to reconsider, the Board of Immigration Appeals (BIA) agreed with the IJ. Martinez maintains: his bank-

fraud conviction is not an aggravated felony; and, in the alternative, he is eligible to seek a discretionary waiver of inadmissibility. DENIED IN PART; GRANTED IN PART; REMANDED.

I.

Born in Argentina, Martinez, at age twelve, was admitted to the United States as a non-immigrant visitor in 1980. Ten years after that admission (entry), he adjusted his status, under amnesty provisions of INA § 245A, to that of a lawful permanent resident. Martinez married an American citizen, in 2000, by whom he has two children.

Both before and after he became married, Martinez worked as an accounts-receivable clerk at a real-estate management firm in New York. In that employment, Martinez illegally took checks and money orders, altered the payees, and deposited the instruments in personal accounts he maintained. Martinez both withdrew, and wrote checks against, those funds.

In June 2001, when his criminal actions were discovered, Martinez pleaded guilty in New York district court to one count of bank fraud, in violation of 18 U.S.C. § 1344. He was sentenced that December to serve five months in prison, followed by five months of home detention and supervised release. Martinez was also ordered to pay approximately $313,000 in restitution.

After Martinez served his five-month prison term (but before he served any of his home detention), Customs officials took him into custody and instituted removal proceedings. The requested removal was premised on the assertion that Martinez had committed an aggravated felony, as defined by INA § 101(a)(43)(M)(i), and was therefore removable under INA § 237(a)(2)(A)(iii). The INA has numerous definitions for what constitutes an "aggravated felony". One is found in the above-referenced subsection (a)(43)(M)(i): an aggravated felony is an offense involving "fraud or deceit in which the loss to the victim or

victims exceeds $10,000". 8 U.S.C. § 1101(a)(43)(M)(i). (Martinez does not contest that the loss exceeded $10,000.)

Martinez was transferred to a detention facility in Oakdale, Louisiana, for removal proceedings. There, an IJ held a hearing on removal vel non.

In February 2003, the IJ sustained removability, on the basis that Martinez had been convicted of an "aggravated felony". It ruled: "By the very terms of [18 U.S.C. § 1344], fraud is an element of the offense."

The IJ also ruled Martinez was ineligible to seek relief under INA § 212(h). It allows the Attorney General, in his discretion, to waive certain enumerated criminal grounds for inadmissibility for qualifying aliens. 8 U.S.C. § 1182(h). (Receiving that waiver would enable Martinez to seek to obtain adjustment of status as the spouse of a United States citizen under INA § 245.)

Concerning § 212(h), the IJ ruled that Martinez' underlying conviction's being an aggravated felony precluded a waiver of inadmissibility. In that regard, the IJ rejected Martinez' contention that the statutory bar for § 212(h) relief did not apply, finding In re Rosas-Ramirez, 22 I. & N. Dec. 616 (BIA 1999) (en banc), controlling.

The IJ also rejected Martinez' claim to United States nationality pursuant to his voluntary registration in 1987 for military service in this country. Conceding the nationality issue is foreclosed, Martinez does not raise it here.

In July 2003, by a brief opinion, the BIA agreed with the IJ's ruling that Martinez' § 1344 conviction constituted an aggravated felony. The BIA also found In re Rosas controlling on eligibility vel non for the § 212(h) waiver of inadmissibility.

Following the BIA decision, instead of filing a petition for review to this court, Martinez applied for habeas relief in New York district court, pursuant to 28 U.S.C. § 2241. Martinez v. Ashcroft, No. 03-CV-4328 (E.D.N.Y. 2003). After briefing and oral argument, however, the parties submitted a joint motion for

reconsideration to the BIA. (It is not clear why the parties jointly sought reconsideration; the record and Martinez' counsel at oral argument here suggest the original BIA decision insufficiently addressed the presented issues.) As a result, this matter was remanded to the BIA, and Martinez was released from the Oakdale facility pending removal.

In April 2004, the BIA denied reconsideration, concluding that neither party "identified additional legal arguments, a change in the law or an argument or aspect of the case that was overlooked". Nevertheless, the BIA also reaffirmed, in far greater detail, its previous aggravated-felony determination and rejection of § 212(h) eligibility. (This greater detail may have resulted from the Government's joining Martinez' motion to reconsider.)

Following the BIA's second ruling, Martinez' New York district-court habeas application was not acted on until 31 May 2005, when his application was transferred to the Second Circuit, pursuant to § 106(c) of the REAL ID Act, Pub. L. No. 109-13, § 106(c), 119 Stat. 231, 310-11 (2005). In November 2005, the Second Circuit granted the Government's motion to transfer this matter to our court.

II.

Under REAL ID Act § 106(c), because Martinez' habeas application was pending on 11 May 2005, it is treated as a timely petition for review of the BIA's order, without the jurisdictional 30-day period for filing such petitions.

> [A]ll collateral proceedings pending on May 11, 2005, when the REAL ID Act took effect, and transferred to courts of appeals under § 106(c), must be treated as timely petitions for review, no matter how long it has been since the Board rendered its decision. Collateral proceedings filed on or after May 11, however, will be dismissed outright; the window for belated judicial review has closed.

Medellin-Reyes v. Gonzales, 435 F.3d 721, 723-24 (7th Cir. 2006); see also Rosales v. Bureau of Immigration & Customs Enforcement, 426 F.3d 733, 736 (5th Cir.

2005) (per curiam); Pub.L. No. 109-13, § 106, 119 Stat. 231, 302-23 (codified in part at 8 U.S.C. § 1252(a)(2)(D)).

Martinez presents two alternative bases why he should be granted relief: he is not removable because his bank-fraud conviction is not an aggravated felony, as that term is defined under INA § 101(a)(43); and he is eligible to seek a discretionary waiver of inadmissibility under INA § 212(h). As discussed infra, because both issues present questions of law, our review is de novo. E.g., Ramirez-Molina v. Ziglar, 436 F.3d 508, 513 (5th Cir. 2006).

## A.

The BIA ruled Martinez removable for committing an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). The REAL ID Act amended 8 U.S.C. § 1252(a)(2)(C) to preclude judicial review of any removal order based, inter alia, on an alien's commission of an aggravated felony. 8 U.S.C. 1252(a)(2)(C); Hernandez-Castillo v. Moore, 436 F.3d 516, 518-19 (5th Cir.), cert. denied, 127 S. Ct. 40 (2006). The Act provides, however, that none of its provisions "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review". 8 U.S.C. § 1252(a)(2)(D) (emphasis added).

Martinez presents a question of law: whether his 18 U.S.C. § 1344 bank-fraud conviction was an aggravated felony, as defined by INA § 101(a)(43). Therefore, we are limited initially to determining our jurisdiction; in doing so, we are limited to deciding whether the conviction was an aggravated felony under the INA. James v. Gonzales, 464 F.3d 505, 507 (5th Cir. 2006). If it was, as discussed above, we lack jurisdiction to review the removal decision. (Concerning the removal decision, Martinez contests only whether he committed an aggravated felony; therefore, in deciding jurisdiction, we concomitantly decide the aggravated-felony basis for removal under INA § 227(a)(2)(A)(iii).)

In determining whether Martinez' prior conviction falls within the INA's definition of aggravated felony, we first accord substantial deference, if

warranted, to the BIA's interpretation of the INA. Omari v. Gonzales, 419 F.3d 303, 306 (5th Cir. 2005) (quoting Smalley v. Ashcroft, 354 F.3d 332, 335-36 (5th Cir. 2003)). Having afforded any necessary deference, we then "review de novo whether the particular statute that the prior conviction is under falls within the relevant INA definition". Id. (citations omitted).

### 1.

In his opening and reply briefs here, Martinez contended: because bank fraud does not require proof of two common-law elements of fraud—reliance and damage—his bank-fraud conviction is not an offense "involv[ing] fraud or deceit", as required to constitute an aggravated felony under INA § 101(a)(43)(M)(i) (subsection (M)(i)). This assertion, as Martinez' counsel conceded at oral argument here, is foreclosed by our court's following decision, rendered after briefing was completed: James, 464 F.3d at 509 ("The plain language of § 1344 . . . necessarily entails fraud or deceit."). Under our precedent, bank fraud is an aggravated felony under subsection (M)(i).

### 2.

Alternatively, Martinez maintains: even with, under James, bank fraud's meeting the definition of aggravated felony as defined by subsection (M)(i), it also contains elements of theft, making it a "hybrid" offense. Therefore, Martinez asserts, in addition to the elements contained in subsection (M)(i), there must be proof of the elements in INA § 101(a)(43)(G) (subsection (G)), another aggravated-felony definition.

Subsection (G) defines an aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year". 8 U.S.C. § 1101(a)(43)(G) (emphasis added). According to Martinez, because bank fraud is a hybrid offense, his bank-fraud conviction cannot be an aggravated felony because he was sentenced to less than the year in prison required by subsection (G).

Martinez' hybrid-offense theory is premised on Nugent v. Ashcroft, 367 F.3d 162 (3d Cir. 2004). In Nugent, an alien was convicted under Pennsylvania law, 18 PA. CONS. STAT. ANN. § 3922(a), of "theft by deception". Nugent, 367 F.3d at 163. Based on this state-law conviction, the BIA affirmed removal based on the alien's commission of an aggravated felony, as defined by subsection (G). Id. at 165.

The Third Circuit agreed subsection (G) was satisfied. Id. at 174. The court did not stop there, however: "If we decide that Nugent's conviction is 'an offense that involves fraud or deceit' as well as 'a theft offense,' then to qualify as an aggravated felony under the INA it must [also] meet the requirements of [subsection (M)(i)]". Id. at 174-75. The court held: "theft by deception" also involved "fraud or deceit"; and the alien's conviction under that statute could not meet the "aggravated felony" standard, because the victim's loss did not exceed $10,000, as required by subsection (M)(i). Id. at 179. Nugent's hybrid-offense holding was premised on the following polysyllogism (as defined at id. at 177 n.4):

> Depriving another of property by fraud or deceit is an offense ([subsection] M).
> The offense of theft by deception deprives another of property by theft ([subsection] G).
> Therefore, the offense of theft by deception is an offense under [subsections] (M) and (G).
>          *     *     *     *     *     *
> The offense of theft by deception is an offense under [subsections] (M) and (G).
> A violation of Pennyslvania's theft by deception statute . . . is an offense of theft by deception.
> Therefore, a violation of Pennysvlvania's theft by deception statute . . . is an offense under (M) and (G)

Id. at 177 (asterisks in original).

Martinez urges our adopting this reasoning.  (In the light of James, this is his only remaining basis for challenging being classified as an aggravated felon.)  He asserted this hybrid-offense theory before the BIA on direct appeal and on motion to reconsider.  It did not address it in either instance.

Our court has not decided whether an offense may properly be characterized as a hybrid fraud/theft offense, which must meet the requirements of both subsections (G) and (M)(i).  See Omari, 419 F.3d at 309 (declining to address the issue, after ruling the underlying offense of conviction (18 U.S.C. §§ 371, 2314 (conspiracy to commit interstate transportation of stolen property)) was not an aggravated felony because it did not involve "fraud or deceit").  Assuming arguendo we would apply a hybrid-offense theory, Martinez' conviction would have to meet the requirements for a "theft" offense under subsection (G), in addition to those for "fraud or deceit" under subsection (M)(i).  On that basis, it would not constitute an aggravated felony because, as noted, Martinez did not serve a term of imprisonment of at least one year, as required by subsection (G).

As stated, pursuant to James, Martinez' § 1344 conviction involves "fraud or deceit".  Therefore, in assessing whether he committed an aggravated felony under a hybrid-offense theory, we must determine whether his § 1344 offense also constitutes a theft offense under subsection (G).  In doing so, we employ the categorical approach provided in Taylor v. United States, 495 U.S. 575 (1990): we look "at the statute under which the alien was convicted rather than at the particular underlying facts" to determine whether the offense falls within a particular definition of "aggravated felony", as defined under INA § 101(a)(43).  Omari, 419 F.3d at 309 (citing Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000)).

"Theft" is not defined by the INA; nor has the BIA done so.  As a result, we apply its commonly understood legal meaning.  See James, 464 F.3d at 508.  The

8

generic definition of "theft offense" is the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent".   Burke v. Mukasey, 509 F.3d 695, 697 (5th Cir. 2007) (formally adopting definition) (emphasis added) (citations omitted).

Viewing the text of the § 1344 bank-fraud statute in the light of this definition, it is not a "theft offense" under subsection (G).  Section 1344 provides:

> Whoever knowingly executes, or attempts to execute, as scheme or artifice–
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (emphasis added).

Applying the categorical approach, neither of the two prongs of § 1344, by its terms, requires property being obtained without the owner's (financial institution's) consent—a critical element, as stated above, of a theft offense.  See also Soliman v. Gonzales, 419 F.3d 276, 283 (4th Cir. 2005); Nugent, 367 F.3d at 174 (noting theft requires property to be taken without consent).  Rather, under § 1344, the property must be obtained by "fraud", which is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment".  See James, 464 F.3d at 508 n.14 (quoting BLACKS LAW DICTIONARY 413 (7th ed. 1999)) (internal quotation marks omitted). "The key and controlling distinction between these two crimes is therefore the 'consent' element–theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained." Soliman, 419 F.3d at 283 (emphasis added).

Indeed, § 1344 applies to situations in which a financial institution voluntarily consents to giving the perpetrator "moneys, funds, credits, assets, securities, or other property", as a result of fraud. See, e.g., United States v. Frydenlund, 990 F.2d 822 (5th Cir. 1993) (bank-fraud conviction for check kiting scheme); United States v. Farmigoni, 934 F.2d 63 (5th Cir. 1991) (bank-fraud conviction where defendant issued unauthorized letters of credit in favor of his cohort, who used the documents to obtain funds from other financial institutions). Although bank-fraud always, in varying degrees, involves a deprivation on terms different than those to which the victim believed she was assenting, this hardly means the definition of fraud is subsumed within the definition of theft. Given this distinction, it would be passing strange, for purposes of INA § 101(a)(43) (providing definitions for aggravated felony), to hold a crime "involving fraud or deceit" is also a "theft offense".

Moreover, on a common-sense level, it is well to remember that Martinez was not charged with the theft (i.e., the taking (caption) and carrying away (asportation)) of the funds he unlawfully obtained through his employment; he was charged, instead, with fraudulently obtaining such funds from a financial institution, under a statute that is materially the same as many other fraud statutes. Accordingly, in the light of our circuit's definitions of the terms, and again assuming arguendo we would apply the hybrid-offense theory, a § 1344 bank-fraud offense would not be a hybrid fraud/theft offense.

This is consistent with Congressional intent. See Soliman, 419 F.3d at 282-83. As part of discerning such intent, we "look to the statutory language as a whole, construing each section in harmony with every other part or section, because 'Act[s] of Congress . . . should not be read as a series of unrelated and isolated provisions'". Id. at 282 (citing Gustafson v. Alloyd Corp., 513 U.S. 561, 570 (1995)) (alteration and omission in original). We must assume that, by giving separate definitions to offenses "involving fraud and deceit" and "theft",

Congress intended them to be different. See, e.g., United States v. Nordic Village, 503 U.S. 30, 36 (1992). In this regard, we are mindful not to construe a definition within § 101(a)(43) to be "so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the [INA]". Gustafson, 513 U.S. at 575 (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303 (1961)) (internal quotation marks omitted).

Martinez' bank-fraud conviction is an aggravated felony for purposes of the INA. Therefore, we lack jurisdiction to review the removal order.

B.

For his alternative legal issue, Martinez contends: contrary to the two BIA decisions, he is eligible to seek a discretionary waiver of inadmissibility (based on hardship) from the Attorney General under INA § 212(h). Although we are without jurisdiction "to review a decision of the Attorney General to grant or deny a [§ 212(h)] waiver", 8 U.S.C. § 1182(h), our court has jurisdiction, as discussed supra, to review the question of law presented by Martinez' challenge to the BIA's construction of § 212(h). 8 U.S.C. § 1252(a)(2)(D) (permitting review of questions of law notwithstanding review being otherwise barred under 8 U.S.C. §§ 1182(h) and 1252(a)(2)(B)(i) & (C)).

In this instance, the term "waiver of inadmissibility" is a misnomer, to say the least. On its face, it would appear that § 212(h) applies only to those aliens seeking admission (entry) into the United States, not those, like Martinez, who are already here. In practice, however, qualifying removable aliens may also obtain such waivers. See Flores-Ledezma v. Gonzales, 415 F.3d 375, 379 n.5 (5th Cir. 2005) (citing Jankowski-Burczyk v. INS, 291 F.3d 172, 175 & n.2 (2d Cir. 2002)); see also CHARLES GORDON, STANLEY MAILMAN & STEPHEN YALE-LOEHR, IMMIGRATION LAW AND PROCEDURE § 51.03 (rev. ed. 2001). Therefore, Martinez' status as a lawful permanent resident (LPR), in and of itself, does not preclude eligibility for a waiver of inadmissibility.

11

The heart of Martinez' claim to being able to seek a § 212(h) waiver focuses on language in the statute, as amended by IIRIRA § 348: aliens are not eligible for the waiver if they have "previously been admitted to the United States as an alien lawfully admitted for permanent residence [i.e., an LPR] if . . . since the date of such admission the alien has been convicted of an aggravated felony". 8 U.S.C. § 1182(h) (emphasis added). Martinez contends: assuming arguendo his bank-fraud conviction constitutes an aggravated felony (as held supra, it does), he is eligible for the § 212(h) waiver because he was not admitted as an LPR, as the statute requires; instead, he was adjusted to LPR status ten years after his admission (entry) into the United States. Such LPR "adjustment", Martinez claims, does not constitute prior "admission" as an LPR for purposes of § 212(h).

Again, in ruling Martinez ineligible for a § 212(h) waiver, the BIA ruled In re Rosas-Ramirez, 22 I. & N. Dec. 616 (BIA 1999) (en banc), is controlling. In Rosas, the BIA considered whether an alien who had entered without inspection, and was later adjusted to LPR status, could be subject to removal proceedings under INA § 237(a)(2)(A)(iii), based on a subsequent aggravated-felony conviction. Rosas, 22 I. & N. Dec. at 617-619. That subsection states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable". 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added).

As noted, the alien had committed the offense after adjusting to LPR status. Rejecting the assertion that such an alien, as an LPR, had somehow acquired immunity from removal, the BIA held aliens who obtained LPR status through adjustment were considered to have accomplished "admission" for purposes of that aggravated-felony removal provision. Rosas, 22 I. & N. Dec. at 619. Notably, however, the BIA did not address whether this interpretation of "admission" applied in the context of waivers of inadmissibility under § 212(h). In fact, the BIA stated it was not "attempt[ing] to resolve the meaning of

'admission' in other contexts or under other provisions for adjustment of status". Rosas, 22 I. & N. at 623 n.5.

The Government urges our deferring to this interpretation, as applied by the BIA in this case, of "admission" in the context of § 212(h) waivers. In general, our de novo review is restrained by our "accord[ing] substantial deference to the BIA's interpretation of the INA . . . and definitions of phrases within it". Omari, 419 F.3d at 306 (quoting Smalley, 354 F.3d at 335-36) (internal quotation marks omitted). Recitation of this substantial-deference standard, without more, is insufficient to require our deference in this instance. Whether we defer to the BIA's interpretation of "admission" for § 212(h) purposes will be determined under the strictures of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and its progeny. See Hamdan v. INS, 98 F.3d 183, 185 (5th Cir. 1996); see also INS v. Cardoza-Fonseca, 480 U.S. 421, 445 & n.29 (1987).

Under Chevron, we defer to agency interpretations of ambiguous statutes. Chevron, 467 U.S. at 845. Administrative agencies are entrusted with the authority to administer Congressionally-created programs, a power which necessarily involves filling in statutory gaps created, either expressly or implicitly, by Congress. Id. (citing Morton v. Ruiz, 415 U.S. 199, 231 (1974)). Deference of this sort, however, is not owed automatically to all agency interpretations of statutory provisions; again, there must be ambiguity.

Therefore, under the Chevron-framework, we first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress". Id. at 842-43. If Congress has, however, left a gap in the statute, "the question for the court is whether the agency's answer is based on a permissible construction of the statute". Id. at 843. Where Congress has explicitly created

a gap for the agency to fill, there is express delegation, and the agency determination will be upheld so long as it is not "arbitrary, capricious, or manifestly contrary to the statute". Id. at 844. On the other hand, where the gap in the statute is implicit, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency". Id. (emphasis added).

In contending we must afford substantial deference to the BIA's interpretation of the term "admission" in § 212(h), the Government cites only our decision in Omari. Under Chevron's above-described threshold question, if we conclude Congress spoke directly on the issue, we do not accord deference to the administrative interpretation. See Cardoza-Fonseca, 480 U.S. at 447-48 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." (internal quotation marks omitted) (quoting Chevron, 467 U.S. at 843 n.9)). Therefore, we must determine whether Congress has spoken to whether aliens, who commit an aggravated felony subsequent to their post-entry adjustment to LPR status, are barred from seeking a § 212(h) waiver of inadmissibility.

In determining whether Congressional intent is clear (and, therefore, deference's not being accorded the agency), we, of course, look first and foremost to the language of the statute. E.g., Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-254 (1992) ("We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Needless to say, plain statutory language is the most instructive and reliable indicator of Congressional intent. White v. INS, 75 F.3d 213, 215 (5th Cir. 1996). Absent indication to the contrary, in analyzing the text of a statute, courts apply the "ordinary, contemporary, common meaning" of the

terms contained in it.  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993).

Section 212(h), the provision at issue regarding waivers of inadmissibility, states in relevant part:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony

8 U.S.C. § 1182(h) (emphasis added).  For determining ambiguity vel non, if this statutory text stood alone, we would define "admitted" by its ordinary, contemporary, and common meaning, as discussed supra. Congress has relieved us from this task, however, by providing the following definition:  "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer".  8 U.S.C. § 1101(a)(13)(A) (emphasis added).  Under this statutory definition, "admission" is the lawful entry of an alien after inspection, something quite different, obviously, from post-entry adjustment of status, as done by Martinez.

With this definition in mind, the plain language of § 212(h) reveals that "admitted", as employed in § 212(h), includes an alien's lawful entry into this country with permanent-resident status.  Stated differently, for the § 212(h) bar to apply:  when the alien is granted permission, after inspection, to enter the United States, he must then be admitted as an LPR.  Accordingly, we find no basis for the statutory language's being ambiguous.  Again, this is based, in part, on Congress' having defined "admitted".

Our holding there is no ambiguity in the term "admitted" is consistent with the application of traditional statutory-construction rules, which we are instructed to use in determining whether Congressional intent is clear before

deferring to an administrative interpretation. See, e.g., EEOC v. Arabian Am. Oil Co., 499 U.S. 244 (1991); see also Cardoza-Fonseca, 480 U.S. at 447-48; Chevron, 467 U.S. at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Here, defining "admitted", as used in § 212(h), to exclude adjustment to LPR status subsequent to entry, as was done by Martinez, is bolstered by the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien". Cardoza-Fonseca, 480 U.S. at 449 (citations omitted). This canon of construction, comparable to the rule of lenity in criminal cases, is based on the drastic nature of removal. "We will not assume that Congress meant to trench on [the alien's] freedom beyond that which is required by the narrowest of several possible meanings of the words used." Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948). Therefore, this rule of narrow construction provides an additional basis to construe § 212(h) in favor of Martinez' being able to seek a waiver of inadmissibility. (Obviously, simply being able to seek the waiver does not mean it will necessarily be granted.)

Conceding that § 212(h)'s plain language might yield the result Martinez seeks, the Government contends we should nevertheless hold "admitted" includes post-entry "adjustment" to LPR status. See Bellum v. PCE Constructors, Inc., 407 F.3d 734, 739 (5th Cir. 2005) ("[N]o canon of statutory construction requires us to honor plain language when to do so would frustrate the unmistakable purpose of the law".). Noting that the reforms enacted in IIRIRA were designed to expedite the removal of criminal aliens from the United States, Lara-Ruiz v. INS, 241 F.3d 934, 947 (7th Cir. 2001), the Government maintains: for an alien who committed an aggravated felony, it would be unreasonable to impute to Congress an intent to distinguish between aliens who entered the country as LPRs and those, like Martinez, who adjusted to LPR

status post-entry. Of course, we recognize the well-established maxim that statutes should be construed to avoid an absurd result. As discussed infra, our construction does not lead to that.

As Martinez points out, Congress may well have been taking a "rational first step toward achieving the legitimate goal of quickly removing aliens who commit certain serious crimes from the country". Lara-Ruiz, 241 F.3d at 947. In Lara-Ruiz, the Seventh Circuit addressed, inter alia, an equal-protection challenge to the INA's distinction between LPRs and non-LPRs for purposes of eligibility to seek a waiver of inadmissibility. Id. Noting that it might have been "wiser, fairer, and more efficacious" not to have made such a distinction, the court found a rational basis for the distinction on the ground that Congress may well have been taking an incremental approach to addressing its ultimate goals. Id.; see McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 809 (1969) ("[A] legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' . . . and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked". (citations omitted)).

This rational basis for the distinction in § 212(h) between aliens who entered the United States as LPRs and those who adjusted to that status post-entry is supported by the fact that, subsequent to IIRIRA's passage, the "Immigration Technical Corrections Act of 1997", H.R. 2413, attempted to amend INA § 101(a)(13) (defining "admission" and "admitted") to include aliens, like Martinez, who had adjusted to LPR status subsequent to being admitted to the United States (to entering this country). This amendment, which demonstrated at least some in Congress felt "admitted" did not include post-entry status "adjustment", was not enacted, perhaps out of recognition that limited enforcement resources should be devoted to attacking the problem in stages.

Moreover, as Martinez also points out, Congress might rationally have concluded that adjusted-to-LPR-status aliens like him are more deserving of being eligible for a waiver of inadmissibility. Martinez entered the United States as a minor, grew up in this country, and developed ties here. He also went through the scrutiny of adjustment, in which his record in the United States was examined. Congress could have concluded rationally that individuals such as Martinez are more deserving, than those who entered as LPRs, of being eligible for the § 212(h) waiver, including likely having more citizen relatives who would be affected adversely by removal.

Of course, it is irrelevant whether Congress made this distinction—between those who entered as an LPR and those who adjusted post-entry to LPR status—based on the "incremental approach", or because it thought candidates such as Martinez more deserving. What is relevant is that there are countervailing explanations for the statutory distinction between "admitted" and "adjustment", which are just as plausible, if not more so, than the Government's contention that such a reading would lead to an absurd result. Therefore, we are not at liberty to override the plain, unambiguous text of INA §§ 212(h) and 101(a)(13).

The Government, for the first time at oral argument, suggested that INA §§ 245 and 245A (governing adjustment to LPR status) support the proposition that, when an alien is granted LPR status, he is deemed "admitted" for purposes of § 212(h). For obvious reasons, we generally do not consider contentions raised for the first time at oral argument. This prudential practice is consistent with a party's waiving a contention because of inadequate briefing. United States v. Le, 512 F.3d 128, 132 n.2 (5th Cir. 2007).

In our discretion, because this is a question of law involving statutory construction, we will consider it. We find no basis in the text of §§ 245 or 245A for this contention. See 8 U.S.C. §§ 1255 & 1255a. Sections 245 and 245A

18

provide the requirements for adjustment to LPR status. "Adjustment" is the procedure by which an alien becomes a LPR without having to first leave the country, as is the case with consular processing. RICHARD D. STEEL, STEEL ON IMMIGRATION LAW § 7.1 (2d ed. 1992, 2007 Supp.). Contrary to the Government's contention at oral argument, these statutes do not provide that adjustment constitutes being "admitted" for the purpose of determining eligibility for a waiver under § 212(h).

To the extent the Government asserts that the existence of the term "lawfully admitted for permanent residence" in those two sections controls our analysis, it is mistaken. That term, "lawfully admitted for permanent residence", is an entirely separate term of art defined at § 101(a)(20), which does in fact encompass both admission to the United States as a LPR and post-entry adjustment to LPR status. Section 212(h), however, expressly incorporates that term of art ("lawfully admitted for permanent residence"), as defined by § 101(a)(20), separate and apart from its use of "admitted", as defined by § 101(a)(13). To illustrate, § 212(h) only denies waivers of eligibility to those aliens who have "previously been admitted [§ 101(a)(13)] to the United States as an alien lawfully admitted for permanent residence [§ 101(a)(20)]" (emphasis added).

Accordingly, we hold: for aliens who adjust post-entry to LPR status, § 212(h)'s plain language demonstrates unambiguously Congress' intent not to bar them from seeking a waiver of inadmissibility. Because we must give effect to that intent, we proceed no further in the Chevron inquiry. Waggoner v. Gonzales, 488 F.3d 632, 636 (5th Cir. 2007). (Furthermore, because § 212(h)'s plain language is unambiguous, we need not reach another issue raised by Martinez: whether customary international law may be applied to resolve ambiguity in the construction of an ambiguous statute. See Beharry v. Reno, 183 F. Supp. 2d 584 (E.D.N.Y. 2002), rev'd on other grounds, 329 F.3d 51 (2d Cir.

2003).) Therefore, under § 212(h), Martinez is eligible to seek a discretionary waiver of inadmissibility.

III.

For the foregoing reasons, the petition is DENIED in part and GRANTED in part. Accordingly, this matter is REMANDED to the BIA for further proceedings consistent with this opinion.