# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2010

Charles R. Fulbruge III
Clerk

No. 09-60070
Summary Calender

MAXIMILIANO PATRICIO MOLINA-RAMIREZ,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

---

Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A41-107-953

---

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Maximiliano Patricio Molina-Ramirez appeals from a decision of the Board of Immigration Appeals ordering him removed from the United States as an alien convicted of an aggravated felony.  We affirm.

## I

Maximiliano Patricio Molina-Ramirez is a native and citizen of El Salvador. Molina-Ramirez claims that he first entered the United States in 1978

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

through San Ysidro, California.  Immigration records establish that Molina-Ramirez was legally admitted to the United States on September 30, 1986, after his American-born wife petitioned for him to become a lawful permanent resident (LPR).  Subsequently, Molina-Ramirez served in the United States Navy during the invasion of Panama in 1989.  Since receiving his discharge from the Navy in 1990, Molina-Ramirez has compiled an extensive criminal record.  His history includes convictions for attempted auto theft, attempted grand theft, and possession of a firearm by a felon.  Most recently, Molina-Ramirez was convicted in the Third Judicial Circuit Court in Wayne County, Michigan, of second-degree home invasion in violation of Michigan Compiled Laws § 750.110a(3), for which he was sentenced to 12 month's incarceration.

Following a trip to El Salvador in 2005, Molina-Ramirez was refused entry into the United States on the basis of his prior convictions.  Molina-Ramirez was deprived of his green card and paroled into the country while the Department of Homeland Security (DHS) obtained a copy of his conviction record to sustain inadmissibility.  The DHS subsequently served Molina-Ramirez with a Notice to Appear charging him as an "arriving alien" subject to removal.  The DHS, however, never filed this charge with the immigration court, and his green card was returned to him through the mail.

A second Notice to Appear was prepared in 2008 and filed with the immigration court.  This second Notice charged Molina-Ramirez as an LPR subject to removal under section 237 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227. The DHS charged him with removability as an alien who at anytime after admission was convicted of: (1) two crimes involving moral turpitude not arising out of a single scheme of criminal conduct, in violation of 8 U.S.C. § 1227(a)(2)(A)(ii); (2) an aggravated felony "crime of violence" under 8 U.S.C. § 1101(a)(43)(F), in violation of 8 U.S.C. § 1227(a)(2)(A)(iii); (3) an aggravated felony firearms offense under § 1101(a)(43)(E)(ii), in violation of

§ 1227(a)(2)(A)(iii); and (4) an aggravated felony theft or burglary offense under § 1101(a)(43)(G), also in violation of § 1227(a)(2)(A)(iii).  Thereafter, the DHS additionally charged Molina-Ramirez as an alien who, at any time after admission, was convicted of a firearms offense, in violation of 8 U.S.C. § 1227(a)(2)(C).

At a hearing before the immigration judge(IJ), Molina-Ramirez's attorney conceded that Molina-Ramirez was admitted to the United States as an LPR in 1986.  Through his attorney, Molina-Ramirez argued that he was eligible for relief because of his service in the military.  Alternatively, Molina-Ramirez argued that, despite his convictions, he was eligible for a discretionary waiver pursuant to INA § 212(h), 8 U.S.C. § 1182(h) (a § 212(h) waiver).

The IJ sustained removability and held that Molina-Ramirez's conviction for home invasion constituted a "crime of violence" and an aggravated felony as defined in section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F). Consequently, the IJ concluded that Molina-Ramirez was statutorily ineligible for cancellation of removal under section 240(a) of the Act, 8 U.S.C. § 1229b(a). Finally, the IJ denied Molina-Ramirez's motion to terminate proceedings to allow him to proceed with his appeal of the DHS's denial of his application for naturalization.  The IJ found that she lacked jurisdiction to adjudicate naturalization applications and noted that Molina-Ramirez could not establish that he was prima facie eligible for naturalization, in any event, because the DHS had already denied his application.  Accordingly, the IJ ordered Molina-Ramirez removed to his native El Salvador.

Molina-Ramirez appealed the IJ's decision to the Board of Immigration Appeals (BIA).  He renewed his argument that his military service qualified him for citizenship and his claim for entitlement to a § 212(h) waiver.  In support of his waiver claim, Molina-Ramirez argued that the IJ erred in concluding as a finding of fact that Molina-Ramirez was admitted into the United States in 1986.

No. 09-60070

Likewise, Molina-Ramirez asserted that, as a person who had adjusted his status after entering the country, he was eligible for a waiver under this under this court's precedent in *Martinez v. Mukasey*.[2]

The BIA affirmed the IJ's finding that Molina-Ramirez "is a native and citizen of El Salvador who was admitted to the United States as a lawful permanent resident on September 30, 1986." The BIA agreed with the IJ's ruling that Molina-Ramirez's home-invasion conviction constituted an aggravated felony and affirmed the ruling that Molina-Ramirez was "ineligible for cancellation of removal." The BIA also found that the IJ's denial of Molina-Ramirez's motion to terminate was mandated by the Board's decisions in *In re Cruz*[3] and *In re Hidalgo*.[4] Molina-Ramirez timely appealed.

## II

This court reviews the decision of the BIA, and we reach the underlying decision of the immigration judge only if that decision has some impact upon the BIA's opinion.[5] This court reviews the BIA's conclusions of law de novo.[6]

## III

Molina-Ramirez presents two related but distinct arguments why he should be granted relief: that (1) he is eligible to seek a discretionary waiver of inadmissibility under INA § 212(h); and (2) he is not barred from seeking a

---

[2] *See* 519 F.3d 532, 546 (5th Cir. 2008) (holding that aliens who adjust to LPR status post-entry are eligible for § 212(h) waivers, while those who are initially admitted into the United States as LPRs do not qualify under the plain language of the statute).

[3] 15 I. & N. Dec. 236 (BIA 1975), *superseded by statute*, Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978, 5038, *as recognized in Saba-Bakare v. Chertoff*, 507 F.3d 337 (2007).

[4] 24 I. & N. Dec. 103 (BIA 2007).

[5] *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002) (citing *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997)).

[6] *Id.*

No. 09-60070

waiver because his home-invasion conviction is not an aggravated felony, as defined under 8 U.S.C. § 1101(a)(43)(F). Molina-Ramirez further requests that the court address the issue of whether an executive order designating the Panama invasion as an armed conflict was required in order for him to be approved for naturalization.

## A

This court lacks jurisdiction to issue a declaratory judgment on the question of whether an executive order designating the Panama invasion as an armed conflict is required for Molina-Ramirez to be approved for naturalization. In 1990, Congress granted the Attorney General exclusive authority to naturalize aliens, removing the authority that courts had previously held to naturalize aliens.[7] Indeed, under the amendment to 8 U.S.C. § 1421, only an affirmative communication from the U.S. Citizenship and Immigration Services may establish prima facie eligibility for naturalization.[8] This court does not have jurisdiction to declare Molina-Ramirez prima facie eligible for naturalization as he requests "when Congress has said that the Attorney General has exclusive authority to naturalize aliens."[9]

## B

The BIA ruled Molina-Ramirez was ineligible for cancellation of removal because his conviction for second-degree home invasion falls within the meaning of a "crime of violence" as defined by immigration law. The INA forbids the cancellation of removal in the case of a deportable alien who has been convicted of "any aggravated felony."[10] Similarly, 8 U.S.C. § 1182(h) gives the Attorney

---

[7] *Saba-Bakare v. Chertoff,* 507 F.3d 337, 341 (5th Cir. 2007).

[8] *Id.*

[9] *See id.*

[10] 8 U.S.C. § 1229b(a)(3).

5

No. 09-60070

General discretion to waive inadmissibility for LPRs in certain circumstances, but LPRs who have committed aggravated felonies since the date of their admission are ineligible for relief.

Molina-Ramirez contends the IJ erred in denying his right to apply for a waiver because the conviction for home invasion under Michigan law was not an aggravated felony.  Specifically, Molina-Ramirez argues that the Michigan offense is a divisible statute that includes conduct that may not be regarded as breaking and entering, such as entering a home without consent.

A conviction is an "aggravated felony" for immigration purposes if the offense involves "a crime of violence" for which the term of imprisonment is at least one year.[11]  The definition of "crime of violence" includes "any offense" that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[12]

The Michigan statute under which Molina-Ramirez was convicted states that a person is "guilty of home invasion in the second degree" if that person: (1) "breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling"; (2) "enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling"; or (3) "breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault."[13] Molina asserts that "entering without permission" is not categorically a "crime of violence" because entering a dwelling without permission does not involve a substantial threat of physical force against the person or property of another.  This argument lacks merit.

_____

[11]  8 U.S.C. § 1101(a)(43)(F).

[12]  18 U.S.C. § 16(b).

[13]  MICH. COMP. LAWS § 750.110a(3).

6

No. 09-60070

In *United States v. Flores*, the defendant asserted that his conviction for burglary of a habitation did not qualify as a crime of violence because there did not have to be a substantial risk of force to be convicted of burglary under the Texas Penal Code.[14] Noting that 18 U.S.C. § 16(b) defined a crime of violence as any felony involving a "substantial risk" of the use of force against another, the court reasoned that "[w]henever a private residence is broken into, there is always a substantial risk that force will be used."[15] Likewise, in *United States v. Guadardo*, this court held that burglary of a habitation under the Texas Penal Code is always a crime of violence under the definition in 18 U.S.C. § 16, obviating the need for a district court to consider the factual context of such a conviction.[16] The Texas statute substantially approximates the Michigan statute under which Molina-Ramirez was convicted, making it a criminal offense if "without the effective consent of the owner, the person . . . enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault."[17]

Molina-Ramirez's unauthorized entry into a habitation—whether by breaking and entering or entering without permission—fits the requirement of 8 U.S.C. § 16(b) that an aggravated felony present a risk that physical force would be used against the person or property of another. The conviction records show that Molina-Ramirez was sentenced to a year of incarceration for his home invasion conviction. Consequently, the BIA properly concluded that his offense is an aggravated felony within the meaning of section 101(a)(43)(F) of the INA,

---

[14] 875 F.2d 1110, 1112 (5th Cir. 1989).

[15] *Id.* at 1113.

[16] 40 F.3d 102, 104 (5th Cir. 1994); *see also United States v. Claiborne*, 132 F.3d 253, 256 (5th Cir. 1998) (emphasizing that anyone who commits unauthorized entry of an inhabited dwelling poses a risk of force).

[17] TEX. PENAL CODE § 30.02.

7

No. 09-60070

thereby making Molina-Ramirez ineligible for cancellation of removal.

## C

Molina-Ramirez further contends that, even if his offense constitutes an aggravated felony, he is still eligible to apply for an INA § 212 waiver to cure removability. Molina-Ramirez repeats two separate arguments that he made in his appeal before the BIA. First, Molina-Ramirez argues that, because he was detained and charged by the DHS in 2005 as an "arriving alien," he is eligible for a § 212(h) waiver. This follows, he reasons, because, as the IJ acknowledged, arriving aliens are not statutorily barred from seeking § 212(h) waivers. However, the case law Molina-Ramirez cites in support of this claim does not support his argument.

In *In re Abosi*, the BIA concluded that an LPR incorrectly charged as an arriving alien by immigration authorities in a removal proceeding did not suffer a change in legal status.[18] Because LPR status cannot be terminated until a removal order becomes final, a charging mistake is without legal effect, and does not thereby convert an LPR into an arriving alien.[19] Molina-Ramirez's argument that this case stands for the proposition that the DHS's 2005 charging mistake entitles him to an arriving-alien waiver is without merit. The DHS's charging mistake in 2005 did not strip Molina-Ramirez of his LPR status.[20]

Similarly, neither *In re Sanchez*[21] nor *In re Millard*[22] stand for the proposition that Molina-Ramirez's inadmissibility in 2005 provides grounds for

---

[18] 24 I. & N. Dec. 204, 206 (BIA 2007).

[19] *Id.*

[20] Moreover, as the BIA observed, because the 2005 NTA was never filed with the Immigration Court, there was never a final decision on the merits, eliminating the grounds for any *res judicata* issues.

[21] 17 I. & N. Dec 218 (BIA 1980).

[22] 11 I. & N. Dec. 175 (BIA 1965).

No. 09-60070

a waiver under § 212(h). These cases hold only that aliens are not barred from seeking § 212(h) waivers simply because they were inadmissible at the time of their original or subsequent entries.[23] Nothing in these cases, however, supports Molina-Ramirez's argument that § 212(h)'s specific prohibition against granting waivers to aliens with aggravated-felony convictions may be ignored in his case. Unlike the petitioners in *Sanchez* and *Millard* who did not commit such crimes, the specific grounds of Molina-Ramirez's inadmissibility cannot be cured through application of § 212(h).

Finally, Molina-Ramirez's attorney conceded before the IJ that he had been admitted as an LPR in 1986. Admissions of fact by counsel in deportation hearings are binding.[24] The BIA correctly affirmed the IJ's decision that Molina-Ramirez did not qualify as an "arriving alien" for the purposes of § 212(h) waiver eligibility.

Alternatively, Molina-Ramirez argues that his eligibility for a waiver is compelled by this court's opinion in *Martinez v. Mukasey*.[25] In that case, we considered the definition of "admitted" under § 212(h). The provision at issue provides in relevant part:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .[26]

The court stated that "for the § 212(h) bar to apply: when the alien is granted permission, after inspection, to enter the United States, he must then be

---

[23] *Sanchez*, 17 I. & N. Dec. at 222-23; *Millard*, 11 I. & N. Dec. at 177-78.

[24] *See Rodriguez-Gonzalez v. INS,* 640 F.2d 1139, 1141 (9th Cir. 1981).

[25] 519 F.3d 532 (5th Cir. 2008).

[26] 8 U.S.C. § 1182(h).

admitted as an LPR."[27]  However, the court reasoned that the plain language of the statue did not encompass aliens like Martinez who had adjusted their status subsequent to their entry into the United States.[28]

The INA provides the following definition: "The terms 'admission' and 'admitted' mean, with respect to an alien, the *lawful entry* of the alien into the United States *after inspection and authorization* by an immigration officer."[29] Citing the plain language of 8 U.S.C. § 1182(h), the *Martinez* court drew a strong distinction between those aliens "admitted" into the United States as LPRs and those like Martinez who were admitted and became LPRs under other circumstances.  As the court explained, "[u]nder this statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status, as done by Martinez."[30]  Because adjustment is a procedure by which an alien becomes an LPR without having to first leave the country, the *Martinez* court concluded that the relevant "statutes do not provide that adjustment constitutes being 'admitted' for the purpose of determining eligibility for a waiver under § 212(h)."[31]  Therefore, the *Martinez* court held that aliens who adjust post-entry to LPR status are not barred from seeking a waiver of inadmissibility under § 212(h).[32]

Molina-Ramirez argued before the BIA that the IJ erred in finding that he was admitted to the United States as an LPR in 1986.  Instead, Molina-Ramirez

---

[27] *Martinez*, 519 F.3d at 544.

[28] *Id.*

[29] 8 U.S.C. § 1101(a)(13)(A) (emphasis added).

[30] *Martinez*, 519 F.3d at 544.

[31] *Id.* at 546.

[32] *Id.*

asserted that the IJ should have found that he entered the country in 1978 and, like the petitioner in *Martinez*, adjusted his status through marriage to a United States citizen. The BIA properly rejected this argument.

In *Martinez*, the petitioner provided substantial evidence that he had "adjusted" his status within the United States after being granted legal entry to the country as a non-immigrant visitor.[33] No such showing was made before the IJ regarding Molina-Ramirez. Although Molina-Ramirez argued before the BIA that he first entered the United States in 1978, nothing in the record indicates how or when Molina-Ramirez crossed the border, and he provided no documents or affidavits to the IJ supporting his claim that he "adjusted" his status. Moreover, the BIA may reasonably have concluded that Molina-Ramirez could not satisfy *Martinez*'s requirements for a § 212(h) waiver because of his counsel's concession that Molina-Ramirez was "*admitted* to the United States at San Ysidro, California on or about September 30, 1986, as a lawful permanent resident alien."

"If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."[34] Because the BIA rejected Molina-Ramirez's argument that he adjusted to LPR status, Molina-Ramirez cannot qualify for a § 212(h) waiver under this court's precedent in *Martinez*. Consequently, the BIA properly ruled in ordering Molina-Ramirez removed from the country as an alien convicted of an aggravated felony.

\*    \*    \*

---

[33] *Id.* at 536.

[34] 8 C.F.R. § 1240.8(d); *see also* 8 U.S.C. § 1229a(c)(4)(A)(i) (stating that an alien applying for relief from removal has the burden of proof to establish that the alien is statutorily eligible for relief).

No. 09-60070

For the foregoing reasons, we AFFIRM the judgment of the Board of Immigration Appeals.