United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 4, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60907

_____

MOHAMMAD YOUSSEF SAID,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Before REAVLEY, JOLLY and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Mohammad Said petitions for review of a decision of the Board of Immigration Appeals ("BIA"). Because we determine that we have no jurisdiction to review the discretionary BIA decision before us, we dismiss his petition for review.

I.

Said is a native of Lebanon. As a Palestinian refugee, however, he claims not to be a Lebanese citizen. Said entered the United States with his parents in 1988 when he was 11 years old. In late summer 1994, when he was 17, Said was arrested and then indicted on charges of aggravated assault with a deadly weapon, his car.

In February 1995, while the charges were still pending, he sought to adjust his status to that of a permanent U.S. resident by filing form I-485 ("the I-485"). On the I-485, Said checked "No" in answer to the question, "Have you ever, in or outside the U.S.: ... been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" After an interview, the adjustment was granted and Said was admitted as a lawful permanent resident ("LPR") on May 2, 1996.

Four days later, Said pled guilty to the felony aggravated assault charge. He was sentenced to three years of probation and fined.

II.

We now turn to recite the procedural history of this matter in some detail, as it proves crucial to the resolution of Said's appeal.

In April 1999, the Immigration and Naturalization Service ("INS") issued a notice to appear alleging (1) that Said had been convicted of a crime involving moral turpitude and (2) that he had procured his LPR status by fraud or by misrepresenting a material fact. The alleged misrepresentation was his false answer on the I-485, given his prior arrest and indictment for aggravated assault.

On May 3, 1999, after completing his sentence, Said was permitted to withdraw his plea to the felony and the state court judgment was vacated. Said was then allowed to enter a new guilty plea to the reduced charge of misdemeanor assault.

Following a hearing in January 2000, an Immigration Judge ("IJ") found that Said had not been convicted of a crime involving moral turpitude based on the 1999 order vacating his felony conviction. The IJ, however, found Said "removable as one who has willfully misrepresented a material fact in connection with seeking benefits from" the INS. The IJ provided no oral or written legal analysis concerning why the misrepresentation on the I-485 was material. Having found Said removable, the IJ denied him voluntary departure. The IJ also denied Said a waiver of removal because he was found to have made a misrepresentation under 8 U.S.C. § 1227(a)(1)(H).

Said appealed to the BIA, arguing that the misrepresentation was not material and that the IJ abused his discretion in denying a waiver of inadmissibility. The BIA agreed with the IJ's determination that the misrepresentation was material.[1] Citing its decision in Matter of Ng, 17 I&N Dec. 536 (BIA 1980), the BIA stated that Said's "no" answer "is the kind of misrepresentation that tends to shut off a line of inquiry which is relevant to the

---

[1] We refer to this decision hereafter as "Said 1."

3

applicant's eligibility, and which might well have resulted in a determination that he was inadmissible." The BIA dismissed the appeal on June 18, 2003 and ordered him removed. Crucial for the purposes of this appeal, Said did not petition the federal courts for review of the decision and order in Said 1.

On August 20, after the expiry of the 30-day period in which he could have appealed, see 8 U.S.C. § 1252(b)(1) (2003), Said filed a motion asking the BIA to reopen and remand the proceedings to the IJ. He did not request that the BIA vacate or reconsider its decision; his motion to reopen only raised the claim that he was now eligible to apply for a discretionary waiver of inadmissibility based on his citizen brother's successful family visa petition. The BIA granted Said's motion to reopen and remand on October 31, 2003.

At a series of hearings before the IJ in early 2004, Said sought (1) a discretionary waiver of his inadmissibility, arguing that his removal would cause extreme hardship to his citizen wife, whom he had married in July 2002, and (2) the opportunity to depart voluntarily. On May 4, 2004, the IJ again denied Said a waiver, finding that his removal would not result in "extreme hardship" to his wife. The IJ reached this conclusion because Said's argument for "extreme hardship" was based on the fact that his wife would have to return with him to Lebanon, which is also her native

4

country.  Although Said speculated on problems they might face there, such as a future civil war and the potential unavailability to Said of a work permit, the IJ found that Said's case fell far short of "extreme hardship" and denied discretionary relief.  The IJ also again denied voluntary departure.

Said filed a motion to reconsider with the IJ, offering evidence of a polygraph examination, which he claimed demonstrated that he had not lied to the IJ in his testimony about the misrepresentation on the I-485.  The IJ denied the motion in June 2004 and Said appealed.

During the pendency of his appeal but prior to his filing a brief with the BIA, Said filed a bar complaint in Texas against his counsel.  She moved to withdraw in January 2005.  Soon thereafter, Said hired his current counsel to argue his appeal to the BIA.  In that appeal, he argued (1) that the IJ had abused his discretion in refusing to grant hardship relief, (2) that the IJ should have admitted the polygraph evidence, and (3) that in Said 1 the IJ and BIA had erred in evaluating the materiality of his original false answer, which is the argument he seeks to have us address and resolve in this petition for review.

On September 6, 2005, the BIA dismissed Said's appeal in a brief per curiam opinion ("Said 2"), stating that it did "not find the [IJ's] factual findings to be clearly erroneous" and thus affirmed his decision denying Said a hardship waiver.  The BIA also

5

approved the rejection of the polygraph evidence in the motion to reconsider. The BIA made no reference to Said's collateral attack on Said 1 with regard to the materiality of his original misrepresentation on the I-485. Said now petitions this court for review.

### III.

We can review only those issues that are properly before us under the governing law granting us subject-matter jurisdiction, the REAL ID Act of 2005. See 8 U.S.C. § 1252 (2006). As an appellate court, we have subject-matter jurisdiction over constitutional claims and questions of law that were exhausted before the BIA. §§ 1252(a)(2)(D); 1252(d)(1). Unless a discretionary grant or denial of relief under § 1182(i) poses such a claim or question, we do not have jurisdiction to review it. § 1252(a)(2)(B). We must raise the issue of our appellate jurisdiction sua sponte, if necessary. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (reminding that "subject-matter delineations must be policed by the courts on their own initiative even at the highest level.").[2]

In this appeal, Said admits his false answer on the I-485 and as a question of law, argues that the IJ and BIA utilized the wrong

---

[2] After oral argument, we asked the parties to file letter briefs explaining our jurisdiction to review the materiality decision in Said 1. As explained more fully below, we hold that we lack jurisdiction over Said's petition for review.

6

standard in <u>Said 1</u> to determine if such misrepresentation was material.[3]  Specifically, he contends that the proper materiality test is provided in <u>United States v. Kungys</u>, 485 U.S. 789 (1988), and that the BIA could not rely on <u>Matter of Ng</u>, which he claims expresses a different, now-overruled standard.[4]  Said requests that we remand the case for a hearing on the materiality of his false statement, applying the <u>Kungys</u> standard.

As we have noted, after the appeal period had passed and Said moved the BIA to reopen the case, the BIA remanded the case to the IJ in October 2003.  On remand, Said contended only that he merited either (1) a discretionary waiver under 8 U.S.C. § 1182(i) or (2) voluntary departure.  Section 1182(i) allows administrative authorities to waive removal in cases of extreme hardship to a U.S. citizen relative or spouse.  § 1182(i)(1).  However, under the clear command of the statute, this sort of discretionary decision is not reviewable by this court unless it presents a constitutional claim or an administratively-exhausted question of law.  § 1252(a)(2)(D).  The order appealed from presents neither an issue of law nor a constitutional claim.

---

[3] We do not entertain Said's argument that the IJ was biased against him or otherwise committed misconduct because this court has no jurisdiction to consider issues that were not raised below. <u>See</u> 8 U.S.C. § 1252(d)(1); <u>Falek v. Gonzales</u>, 475 F.3d 285, 289 (5th Cir. 2007).

[4] We ultimately express no opinion on the merits of this argument.

Said does not offer any argument in the appeal before us that the BIA or the underlying IJ's decision legally (or constitutionally) erred in evaluating the standard for "extreme hardship" in Said 2.[5] Instead, he argues that no evidence was offered that his original misrepresentation was material, an issue litigated and settled in Said 1, his first, unappealed appearance before the BIA. Despite Said's suggestion to the contrary, neither the IJ's nor the BIA's "extreme hardship" decisions -- the decisions under review today -- relied on the earlier determination that Said's falsity was material, but instead on factual findings concerning his wife's situation and his fitness for voluntary departure.[6]

---

[5] Nor does he challenge the denial of voluntary departure.

[6] In his letter brief, Said argues that Said 2 builds upon the legal error that he asserts was committed in Said 1 because the IJ again found that Said had lied during his testimony before the IJ. Although it is true that the IJ again heard testimony concerning Said's truthfulness at various stages of the administrative process, the testimony was admitted not because any such legal question was at issue. Instead, Said's previous counsel offered it because she wanted the IJ "to hear some evidence ... because I don't think he was lying to you [before] and I think we can convince you of that." The IJ responded: "We're here to let you present whatever evidence you wish to present." This evidence was introduced in an attempt to convince the IJ to look favorably upon Said's request for discretionary relief, and not as an attempt to challenge the legal correctness of Said 1. In the Said 2 decision, the IJ reviewed the history of Said's truthfulness but the decision was specifically limited to whether "it would be an extreme hardship for the U.S.-citizen spouse if the respondent were removed from the United States" and whether Said merited voluntary departure.

8

Thus, because Said does not present any constitutional claim or question of law arising from the discretionary decision from which he petitions for review, we do not have subject-matter jurisdiction.

IV.

For the foregoing reasons, Said's petition for review is hereby

DISMISSED.

9