**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2013

Lyle W. Cayce
Clerk

No. 12-60658

JOSE RODRIGUEZ SILOS,

                              Petitioner,

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

                              Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A028 581 119

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

PER CURIAM:[*]

Jose Rodriguez Silos is a citizen of Mexico who was granted lawful permanent resident (LPR) status as a result of his marriage to a United States citizen, which was later determined to be fraudulent. Consequently, when he attempted to reenter this country after a trip to Mexico, Silos was charged as an inadmissible alien pursuant to 8 U.S.C. § 1182(a)(6)(C)(i). In April 2011, the immigration judge (IJ) issued an oral decision finding Silos removable as charged and denying his request for waiver of inadmissibility and for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

cancellation of removal. *See* 8 U.S.C. §§ 1227(a)(1)(H), 1229b(b). The Board of Immigration Appeals (BIA) affirmed the IJ's ruling in all respects and dismissed Silos's petition for review. Silos now submits a Petition for Review before this court. For the reasons stated herein, the Petition for Review is denied in part and dismissed in part.

## I.

Silos first attempted to gain entry into this country on May 22, 1988, by falsely claiming to be a United States citizen. He was subsequently denied entry and granted voluntary departure to Mexico. A few years later, he returned to the United States and married a U.S. citizen, Mary Lou Hernandez, in March 1996. According to Silos, during his marriage to Hernandez, he worked in San Antonio and stayed in a hotel during the week but returned to live with Hernandez on the weekends. Approximately one year after marrying Silos, Hernandez petitioned for him to become an LPR. In November 2001, the application for adjustment of status was approved, and Silos was issued an LPR card.[1] Less than a month later, the couple no longer resided under the same roof at all. Moreover, while still married to Hernandez yet not living with her, Silos had a child with another woman named Dora Gutierrez in August 2002. Less than a year later, in January 2003, while still married to Hernandez but not living with her, Silos had a child with yet another woman named Dora Arredondo. In addition to not living with his wife, Silos never established legal residency with either of his children or their mothers. Also in 2006, while still married to Hernandez, Silos was arrested on charges of prostitution.

Then in 2009, a government investigation uncovered a marriage fraud ring involving more than ten fraudulent marriages entered into by Hernandez for immigration purposes, including her marriage to Silos. In July 2009, Hernandez pleaded guilty to conspiracy to commit fraud in connection with immigration

---

[1] The application was approved pursuant to "Form I-130: Petition for Alien Relative."

documents and was sentenced to eight months' imprisonment and two years of supervised probation after release.

In light of Hernandez's conviction involving the fraudulent marriage ring, the Department of Homeland Security, United States Citizenship and Immigration Services (USCIS) recommended that a Notice to Appear in immigration court be issued to Silos. A Notice to Appear was issued and mailed to him at that time via certified mail. Shortly thereafter, Silos departed the United States for a short trip to Mexico. Then on March 11, 2010, at approximately 5:00 a.m., Silos attempted to return to the United States via the port of entry in Laredo, Texas, by presenting his permanent resident card. At that time, Customs and Border Protection (CBP) Officer Alejandro Morales, Jr., detained and interviewed Silos with regard to his LPR status, allegedly obtained as a result of his fraudulent marriage to Hernandez.

During the course of his interview with Officer Morales while in DHS custody, Silos signed a sworn statement dated March 11, 2010 indicating that: (1) he married Hernandez in 2001 in Grand Prairie, Texas;[2] (2) he became an LPR of the United States in 2001; (3) the marriage was entered into by fraud for the sole purpose of circumventing U.S. immigration laws to obtain an immigration benefit; (4) he met Hernandez through a friend in 2000 and asked for her help to immigrate to the United States by marrying him; (5) he gave Hernandez a BMW as payment for her help; and (6) he no longer lived with Hernandez. The signed statement also indicated that he understood all of the questions asked of him, that he answered all of the questions voluntarily, and that his answers were true and correct to the best of his knowledge and belief. A Form I-213: Record of Deportable/Inadmissible Alien was then generated memorializing the sequence of events surrounding Silos's attempt to gain entry into the U.S. on March 11, 2010. The form contained the information taken from

---

[2] The record shows that Silos and Hernandez married in 1996, not 2001.

Silos by Officer Morales and confirmed Silos's sworn statement that his marriage to Hernandez was fraudulent.

Silos was then processed for removal proceedings under the Immigration and Nationality Act (INA) and again served a Notice to Appear. The Notice charged Silos with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who, by fraud or willful misrepresentation of a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit under the INA.

*A. Proceedings before the IJ*

In immigration court in February 2011, Silos denied the charge of inadmissibility and moved to suppress the Form I-213 and the sworn statement given to Officer Morales, arguing that the statement was signed under duress in violation of the his Fourth and Fifth Amendment rights. Additionally, he requested a waiver of inadmissibility under 8 U.S.C. § 1227(a)(1)(H), as well as cancellation of removal pursuant to 8 U.S.C. § 1229b(b).

At the hearing, Silos testified that his marriage to Hernandez was bona fide and that they did not have marital problems. According to Silos, during his marriage to Hernandez, he worked most weekdays in San Antonio and stayed at a hotel, and then he would return to Dallas on the weekends. Silos claimed that he was unaware of Hernandez's prior marriages. Silos further testified that when he was detained by DHS in March 2011, he was seated handcuffed to a chair for two or three hours and then an officer began to question him. That afternoon, Silos testified that he requested to use the restroom and was permitted to do so, and that he was again handcuffed to the chair upon his return. He then claimed that he remained handcuffed to the chair overnight and was not given any food until the next morning. He stated that several officers questioned him about his marriage to Hernandez and that he told them that he did not marry her in order to procure a green card. Nevertheless, Silos testified that he signed the sworn statement at approximately 6:00 or 7:00 p.m. on March

12th because he was tired and had not had much sleep. Silos testified that he did not review the statement before he signed it. He further claimed that he was not told that he could hire a lawyer or offered any information about legal services. At this point during his testimony, Silos was given a copy of a legal services list dated March 11, 2010, bearing the signature of "Jose Rodriguez Silos." He denied that the signature on the document was his.

Officer Morales testified that he had been employed with the DHS since 2005 and that he is fluent in Spanish. He stated that on March 11, 2010, he was employed as a CBP officer in Laredo, Texas, and took the sworn statement at issue from Silos that was signed on that day. He explained that the sworn statement is taken in order to obtain information necessary for the preparation of a Notice to Appear. He stated that the process of completing the sworn statement and issuing the Notice to Appear can take between two hours and two days and that he was unsure as to the exact period of time for which Silos was detained. He went on to state that, if an individual is held for a long period, he is given bathroom breaks and provided with food and water. Also, if an applicant for admission does not want to answer a question, an annotation is made that the applicant refused to answer but that no such annotation was made on Silos's sworn statement.

Upon hearing the testimony and reviewing the evidence presented, the IJ issued an oral decision finding Silos inadmissible as charged in the Notice to Appear and ordered him removed to Mexico. The IJ determined that Silos was properly charged as an arriving alien seeking admission notwithstanding his status as a permanent resident. The IJ explained that generally, pursuant to 8 U.S.C. § 1101(a)(13)(C), an alien lawfully admitted for permanent residence who departs from and returns to the United States shall not be regarded as seeking an admission into the United States. However, because Silos's LPR status was proven to be procured by fraud, section 1101 did not protect Silos. *See Matter of Quilantan*, 25 I. & N. Dec. 285, 292 (BIA 2010).

The IJ also denied Silos's motion to suppress the sworn statement and the Form I-213. The IJ found that Silos's claim that the sworn statement was taken on Friday, March 12, 2010, after he was handcuffed to a chair overnight was "patently false." The IJ supported this finding by noting that Silos's claim was contradicted by the testimony of Officer Morales, whom the IJ found to be credible, as well as the Form I-213, both of which indicated that Silos was questioned and processed on March 11. The IJ ultimately concluded that the sworn statement was taken from Silos in a reasonable and fair manner and that the use of the information in the statement and the form would be fundamentally fair. Thus, in consideration of the evidence contained in the sworn statement and the Form I-213, the IJ determined that there was clear and convincing evidence that Silos obtained his adjustment of status by fraud or by misrepresentation of a material fact. Accordingly, the IJ sustained the charge of inadmissibility as set forth in the Notice to Appear.

Given the evidence presented in court contradicting Silos's testimony, the IJ determined that Silos lacked credibility. As a result, the IJ found that Silos's false testimony precluded a finding of good moral character as required for cancellation of removal under 8 U.S.C. § 1229b(b). Further, the IJ found that, even if Silos were not precluded from a finding of good moral character and could potentially qualify for cancellation of removal, he would nevertheless be ineligible for such relief because he had failed to establish that his removal would cause exceptional and extremely unusual hardship to either of his U.S. citizen children.

Finally, the IJ denied Silos's application for a waiver of inadmissibility under 8 U.S.C. § 1227(a)(1)(H). In doing so, the IJ noted that Silos had established ten years of continuous physical presence in the U.S., had a lengthy employment history, and had two U.S. citizen children but concluded that such positive factors were outweighed by the fact that Silos attempted to enter the

country by falsely claiming citizenship in 1988, obtained LPR status through fraud, and had perpetuated the fraud through his testimony during the hearing.

### B. Petition for Review before the BIA

The BIA affirmed the IJ's ruling for the reasons stated by the IJ, specifically noting that, with regard to the denial of the motion to suppress, the Government's evidence contradicted Silos's testimony that he signed the statement on March 12. The BIA went on to state that, "[m]oreover, even if he was detained for more than 24 hours, there is no indication that the conditions were inhumane, that the delay was due to something other than information-gathering by the DHS, or that he was 'brow-beaten' into signing the statement. Therefore, the respondent failed to demonstrate that his answers to DHS's questions were involuntary or coerced."

Finally, the BIA rejected Silos's due process arguments with regard to the immigration proceedings before the IJ because Silos failed to demonstrate the requisite "substantial prejudice" resulting from: (1) the IJ's denial of a continuance of the April 22, 2011 hearing because Silos was represented by substitute counsel after the motion was denied; (2) the presentation of Morales's testimony at the hearing because Silos was given an opportunity to cross-examine the officer; and (3) the Government's submission of documentary evidence, including a 1988 record of sworn statement and Silos's criminal conviction record, because Silos knew about the documents.

### C. Petition for Review before this court

In his petition for review before this court, Silos argues that the IJ erred in classifying him as an arriving alien seeking admission to the U.S. Further, he argues that the IJ erred in determining that he committed marriage fraud, and was thus inadmissible, because the IJ should have suppressed his signed sworn statement and the accompanying Form I-213. Additionally, Silos argues that the IJ violated his due process rights by allowing the Government to present the testimony of Officer Morales, by denying his motion to continue, and

7

by showing bias toward the Government.  Finally, Silos argues that the IJ erred in denying his request for cancellation of removal and for waiver of inadmissibility.  We are not persuaded by these arguments.

## II.

We review the decision of the BIA, as well as the decision of the IJ, because the BIA approved of and relied upon the IJ's decision.  *See Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007) (citations omitted).  We review the IJ's and the BIA's rulings of law de novo and findings of fact for substantial evidence.  *Id.* at 594 (citation omitted).  Credibility determinations are entitled to deference unless, "from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009) (citations omitted).

*a. Silos's charge as an arriving alien seeking admission to the U.S.*

Silos's argument that the IJ improperly charged him as an arriving alien seeking admission to the U.S. is without merit.  Generally, "an alien lawfully admitted for permanent residence in the United States [is not] regarded as seeking an admission into the United States for purposes of [United States] immigration laws" when he returns to the country.  8 U.S.C. § 1101(a)(13)(C).  However, an alien who procures permanent residence through fraud is not an alien "lawfully admitted for permanent residence."  *See In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003) (holding that an alien who obtained LPR status through fraud is not lawfully admitted); *see also Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983) (stating that "'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity").  We agree with the BIA's conclusion that the IJ's determination that Silos obtained his LPR status through a fraudulent marriage is supported by substantial evidence, thereby negating his LPR status.  *See In re Koloamatangi*, 23 I. & N. Dec. at 550.  Accordingly, the IJ properly charged Silos as an arriving alien seeking admission when he returned from Mexico on March 11, 2010.

*b. Silos's inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(C)(i)*

Although Silos was not entitled to the full panoply of constitutional protections available in criminal prosecutions in his removal proceedings, *see United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999) (citations omitted), he was entitled to due process protections, and any involuntary statements could not be used against him, *see Bustos-Torres v. INS*, 898 F.2d 1053, 1057 (5th Cir. 1990) (citations omitted).  In denying Silos's motion to suppress his signed sworn statement and accompanying I-213 Form, the IJ concluded that the evidence and testimony presented at the hearing conflicted with Silos's testimony that his signed sworn statement was involuntary.  The IJ further found Officer Morales's testimony to be credible and supported by the evidence.  Given the highly deferential standard that we employ, and in light of the totality of the evidence, including Silos's criminal record, his history of attempts to unlawfully gain access to the U.S., and the overwhelming evidence indicating that his marriage to Hernandez was fraudulent, Silos has failed to show that "it is plain that no reasonable fact-finder could make . . . an adverse credibility ruling" against him. *Wang,* 569 F.3d at 538 (internal quotation marks and citations omitted).

Additionally, we agree with the BIA's conclusion that, even if Silos was detained for more than 24 hours, he failed to show that the conditions of his detainment during which he signed the sworn statement were so extreme as to rise to a level of coercion or duress such that his signing the statement was involuntary.  *See Sewani v. Gonzales*, 162 F. App'x. 285, 288 (5th Cir. 2006) (holding that because Petitioner "failed to show the requisite 'coercion, duress, or improper action on the part of the immigration officer' to evidence involuntariness," the IJ did not abuse his discretion in admitting the Form I-213 into evidence).  Accordingly, we conclude the IJ did not err in denying Silos's motion to suppress.  *See Bustos-Torres*, 898 F.2d at 1055-56.  Consequently, because the sworn statement provided that Silos's marriage was fraudulent and

"for the sole purpose of circumventing U.S. Immigration laws," the IJ did not err by determining that he was inadmissible pursuant to § 1182(a)(6)(C)(i).

### c. Cancellation of removal

The IJ did not err in determining that Silos was ineligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(b). Because the IJ properly found that Silos gave false testimony during the hearing in immigration court, and therefore was precluded from a finding of good moral character, he was ineligible for cancellation of removal on that basis. *Id.* § 1229b(b)(1)(B); *see also* 8 U.S.C. § 1101(f)(6). Further, we agree with the BIA's conclusion that, even if good moral character could have been established, Silos did not demonstrate the requisite hardship to his U.S. citizen children should he be removed. *Id.* § 1229b(b)(1)(D).

### d. Due process arguments

With respect to his various due process arguments, Silos has abandoned his argument that the IJ violated his due process rights by allowing the Government to present evidence at the merits hearing although the Government failed to file witness and exhibits lists, because he does not dispute the BIA's finding regarding the lack of substantial prejudice, nor does he explain how he was prejudiced by the IJ's decision. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003); *see also Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012) (citation omitted) (stating that to prevail on a due process claim, an alien must show substantial prejudice arising from the alleged violation). Additionally, Silos's argument that the IJ erred in denying his motion to continue thereby requiring him to proceed without counsel of his choosing is without merit, as Silos was represented by substitute counsel at the hearing and fails to show the required substantial prejudice. *See Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993). Moreover, the IJ had previously granted several motions to continue filed by Silos's counsel prior to ultimately denying the February 2011 motion. Finally, Silos's argument that the IJ was biased against him was not raised

before the BIA; thus, we lack jurisdiction to consider this argument. *See Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004).

### e. Denial of waiver of inadmissibility

The Attorney General may in his discretion waive the removability of an alien who was inadmissable at the time of his admission to the United States if he is the spouse, parent or child of a United States citizen and at the time of his admission he possessed an immigrant visa or was otherwise admissible to the United States at the time. 8 U.S.C. § 1227(a)(1)(H)(i). Under 8 U.S.C. § 1252, "no court shall have jurisdiction to review" a judgment pertaining to the granting of relief under § 1182(h) or "any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General. . . ." *Id.* §§ 1252(a)(2)(B)(i), (ii). However, this court does have jurisdiction over constitutional claims and legal questions. *Martinez v. Mukasey*, 519 F.3d 532, 538 (5th Cir. 2008) (citation omitted); *Said v. Gonzales*, 488 F.3d 668, 670 (5th Cir. 2007) (citations omitted).

The IJ's determination that Silos was not entitled to waiver relief because the negative factors (his repeated frauds and misrepresentations and the fact that he did not reside with his children), outweighed the positive factors (that he had been residing in the U.S. for at least ten years and his lengthy employment history), is a factual determination. *See Delgado-Reynua v. Gonzales*, 450 F.3d 596, 599-600 (5th Cir. 2006) (finding that challenge to BIA's reweighing of factors to deny discretionary relief was not reviewable). Thus, we do not have jurisdiction to review the IJ's discretionary denial of Silos's request for cancellation of removal under 8 U.S.C. § 1227(a)(1)(H)(i), as he raises no legal or constitutional questions. *See Martinez*, 519 F.3d at 538; *Said*, 488 F.3d at 670.

### III.

For the foregoing reasons, the petition for review is DENIED in part and DISMISSED in part.