**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUANA NEGRETE-RAMIREZ,
                            *Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,
                            *Respondent*.

No. 10-71322

Agency No.
A079-355-559

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 9, 2011—San Francisco, California

Filed January 21, 2014

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,\*
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Cowen;
Concurrence by Judge Berzon

---

\* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Juana Negrete-Ramirez's petition for review of the Board of Immigration Appeals' decision finding that the statutory language of the Immigration and Nationality Act excludes her from eligibility to apply for a waiver of inadmissibility under Immigration and Nationality Act § 212(h).

The panel held that under the plain language of INA § 212(h) only non-citizens who entered the United States as lawful permanent residents are barred from eligibility to apply for waiver. The panel held that Negrete-Ramirez is not barred from applying for a waiver, because her post-entry adjustment of status to a lawful permanent resident after her admission to the U.S. does not constitute an admission in the context of INA § 212(h).

Concurring, Judge Berzon wrote separately to comment on the BIA's precedential opinions affecting the interpretation of INA § 212(h). Judge Berzon wrote that the overall premise of the BIA's opinions is that the plain language approach to the incorporation of the definition of "admission" and "admitted" in INA § 101(a)(13) cannot suffice, both in general and with regard to the INA § 212(h) waiver, but that she is persuaded rather by the majority opinion's approach applying a plain words interpretation to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the statutory definition of "admission" and "admitted" in the INA when it is sensible to do so.

## COUNSEL

Michael K. Mehr (argued) and Rachael E. Keast, Santa Cruz, California, for Petitioner.

Laura Halliday Hickein (argued) and Nancy Canter, Washington, D.C., for Respondent.

## OPINION

COWEN, Circuit Judge:

Juana Negrete-Ramirez petitions for review of the Board of Immigration Appeal's ("BIA") order dismissing her appeal. Negrete-Ramirez contends that the BIA erred in determining that the statutory language of the Immigration and Nationality Act ("INA") excludes her from eligibility to apply for an inadmissibility waiver under Section 212(h) of the INA, 8 U.S.C. § 1182(h) ("§ 212(h) waiver"). In reaching its conclusion, the BIA misinterpreted the plain language of INA § 212(h) and Ninth Circuit precedent. A *de novo* review of the statutory text, as well as the precedent of this Court and our sister Circuits, leads to the conclusion that Negrete-Ramirez is eligible to be considered for the § 212(h) waiver. *See Papazoglou v. Holder*, 725 F.3d 790, 792–94 (7th Cir. 2013); *Leiba v. Holder*, 699 F.3d 346, 348–56 (4th Cir. 2012); *Hanif v. Attorney General*, 694 F.3d 479, 483–87 (3d Cir. 2012); *Martinez v. Attorney General*, 693 F.3d 408, 411–16 (3d Cir. 2012); *Bracamontes v. Holder*, 675 F.3d 380,

384–89 (4th Cir. 2012); *Lanier v. Holder*, 631 F.3d 1363, 1365–67 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532, 541–46 (5th Cir. 2008). We grant the petition for review and remand to the BIA with instructions to remand to the Immigration Judge ("IJ") so that Negrete-Ramirez may seek a § 212(h) waiver.

## I.

Negrete-Ramirez was admitted into the United States, as defined by 8 § U.S.C. 1101(a)(13), in April 1996 on a B2 visitor visa. She subsequently adjusted her status to that of a lawful permanent resident ("LPR"). Four years later, Negrete-Ramirez pleaded *nolo contendre* to two counts of committing a lewd act upon a child in violation of Section 288(a) of the California Penal Code. In January 2009, she was returning from abroad and was paroled[1] into the United States by the Bureau of Border and Customs Protection. Removal proceedings were initiated against her after she was served with a Notice to Appear. In the Notice to Appear, the Department of Homeland Security charged her with being inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude.

At the removal hearing, the IJ found Negrete-Ramirez removable as charged. When she informed the IJ that she would apply for relief in the form of cancellation of removal under 8 U.S.C. § 1229b, the IJ held that her conviction was for an aggravated felony, and she was ineligible for cancellation of removal. Negrete-Ramirez appealed this

---

[1] "An alien who is paroled . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B) (defining "admission" and "admitted").

decision to the BIA, but the record could not be located and the case was remanded to develop a new record.

On remand, Negrete-Ramirez made a motion to the IJ to calendar proceedings to allow her to apply for a § 212(h) waiver. A § 212(h) waiver is granted at the discretion of the Attorney General to aliens whose inadmissibility is based on certain criteria. The IJ calendared a hearing for her § 212(h) waiver application. At the hearing, the IJ determined that she was not eligible to apply for the § 212(h) waiver because of her aggravated felony conviction following her adjustment of status to an LPR. *Matter of Juana Negrete Ramirez*, A79 355 559 (Oct. 22, 2009). Negrete-Ramirez appealed the decision to the BIA. The BIA found her ineligible to apply for the § 212(h) waiver due to her aggravated felony because she was "'admitted' to the United States when she adjusted her status in 2002" and affirmed the IJ's order. *Matter of Juana Negrete-Ramirez*, A079 355 559 (BIA Apr. 21, 2010).

II.

The issue before us is whether a noncitizen, who is admitted to the United States on a visitor visa and later adjusts her status to a lawfully admitted permanent resident without leaving the United States, qualifies under 8 U.S.C. § 1182(h) as "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence," and, therefore, is ineligible to apply for a § 212(h) waiver.

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review the legal question of whether Negrete-Ramirez is statutorily eligible to apply for a § 212(h) waiver. *De novo* review of a statutory construction begins with the text of the

statute. *See, e.g., Hing Sum v. Holder*, 602 F.3d 1092, 1095 (9th Cir. 2010). "In the context of an unambiguous statute, we need not contemplate deferring to the agency's interpretation." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

### III.

If "Congress has directly spoken to the precise question at issue," the Court "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43; *Sum*, 602 F.3d at 1095. Review of the relevant statutory text and "employ[ment of] traditional tools of statutory construction," *Chevron*, 467 U.S. at 843 n.9, leads to the conclusion that the text is unambiguous and that the bar to seeking a § 212(h) waiver of inadmissibility does not apply to persons who adjusted to lawful permanent resident status after having entered into the United States by inspection. To date, our sister Circuits have — without exception — "held that § 212(h) precludes a waiver only for those persons who, at the time they lawfully entered into the United States, had attained the status of lawful permanent residents." *Papazoglou*, 725 F.3d at 793 (citing *Hanif*, 694 F.3d at 487; *Bracamontes*, 675 F.3d at 386–87; *Lanier*, 631 F.3d at 1366–67; *Martinez*, 519 F.3d at 546). We ultimately agree with the Third, Fourth, Fifth, Seventh, and Eleventh Circuits.

The relevant text governing the § 212(h) waiver is as follows:

> [n]o waiver shall be granted under this subsection in the case of *an alien who has previously been admitted to the United States*

*as an alien lawfully admitted for permanent residence* if [] since the date of such admission the alien has been convicted of an aggravated felony . . . .

INA § 212(h), 8 U.S.C. § 1182(h) (emphasis added). As the Ninth Circuit observed in its analysis of this exact text, it "is divisible into two distinct phrases: namely, (1) 'an alien who has previously been admitted to the United States' and (2) 'as an alien lawfully admitted for permanent residence.'" *Sum*, 602 F.3d at 1095 (quoting 8 U.S.C. § 1182(h)).[2] The definitions section of the INA sets forth separate definitions for "admitted," as used in the first phrase, 8 U.S.C. § 1101(a)(13), and "lawfully admitted for permanent residence," *id.* § 1101(a)(20), as used in the second phrase. An analysis of the statutory language requires an assessment of the effect of these terms on the meaning of the provision as a whole. Resolving the issue before the Court turns primarily on whether "admitted" as understood in § 212(h) includes Negrete-Ramirez's post-entry adjustment of status.

### 1. 8 U.S.C. § 1101(a)(13)(A): "Admitted" and "Admission"

The statute defines "admitted" and "admission" as "the lawful *entry* of the alien *into the United States* after

---

[2] In *Sum*, the issue before the Ninth Circuit was whether the petitioner, who was admitted into the United States at a point of entry by misrepresenting his status as a lawful permanent resident, was eligible to apply for a § 212(h) waiver. The Court held that the definition of "admitted" under the INA referred to a procedurally lawful entry rather than a substantively lawful entry. As a result, petitioner's admission at the point of entry into the United States was as an LPR; therefore, he was ineligible to apply for a § 212(h) waiver. *Sum*, 602 F.3d at 1094–1101.

inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Applying the "ordinary, contemporary, common meaning" of this definition's terms reveals that it is limited and does not encompass a post-entry adjustment of status. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993); *see also Papazoglou*, 725 F.3d at 792–93; *Leiba*, 699 F.3d at 350–51; *Hanif*, 694 F.3d at 484–85; *Bracamontes*, 675 F.3d at 385–86; *Lanier*, 631 F.3d at 1366–67; *Martinez*, 519 F.3d at 543–44. The definition refers expressly to *entry into* the United States, denoting by its plain terms passage into the country from abroad at a port of entry.

The government urges the Court to adopt a definition of "admitted" that includes post-entry adjustment of status to an LPR. In support of its argument, the government cites three Ninth Circuit cases that interpret "admission" and "admitted" as used in specific sections of the INA to include adjustment of status. None of the cases involve a departure from the statute's plain language definition of "admitted" as used in § 212(h). And none of the cases involve statutory language that is divisible into two distinct phrases, each with its own term of art, like that in § 212(h).

The first case, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir. 2005), cannot be relied on as binding precedent for the principle that adjustment of status to an LPR is an "admission" because the issue was neither before the Court nor addressed by it. In *Cuevas-Gaspar*, the Court held that a parent's status may be imputed to their minor unemancipated child for purposes of cancellation of removal under 8 U.S.C. § 1229b(a). *Id.* at 1029. The Court's analysis was premised on the assumption that the petitioner would satisfy the cancellation of removal requirement of 7 years of continuous

residence "after having been admitted in any status" if his mother's adjustment of status to LPR was imputed to him. *Id.* at 1021–29. The threshold issue of whether a post-entry adjustment of status to LPR is an "admi[ssion] in any status" was not mentioned by the Court. Accordingly, although *Cuevas-Gaspar* might imply a broader definition of "admitted" than that in 8 U.S.C. § 1101(a)(13), the Court did not hold that adjustment of status is an "admission" in any context, let alone the one presently before the Court. In any case, the Supreme Court subsequently overruled *Cuevas-Gaspar*. *See Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2012).

The other two cases cited by the government fare only slightly better. In *Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001), the petitioner had entered the United States, but was not admitted as defined by 8 U.S.C. § 1101(a)(13), like Negrete-Ramirez was, before adjusting his status to an LPR. The petitioner argued that he was not removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which states "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," because he was never "admitted" according to 8 U.S.C. § 1101(a)(13). *Id.* at 1134. Notably, as opposed to rejecting petitioner's narrow interpretation of 8 U.S.C. § 1101(a)(13), the Court "reject[ed] Ocampo-Duran's overly-narrow interpretation of [§ 1227(a)(2)(A)(iii)]" because it would create a loophole in removability for those who entered without inspection. *Id.* at 1135. The Ninth Circuit later expounded on this reasoning in *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1148 (9th Cir. 2004), stating that "[§ 1101(a)(13)(A)] was plainly inapplicable" to Ocampo-Duran's case and that the Court "embraced an alternative construction of the term in order to . . . avoid the absurd result [it] would be forced to give the provision in the

case of aliens who enter the country unlawfully." *Id.* In *Shivaraman*, the Ninth Circuit distinguished *Ocampo-Duran* and reversed the BIA's determination that the date of admission was the date on which the petitioner adjusted his status to lawful permanent residence because the petitioner had been admitted as defined by 8 U.S.C. § 1101(a)(13) before adjusting his status. *Id.* at 1148–49. The *Shivaraman* Court rejected the notion that an alien can have more than one date of admission for purposes of the five year removal provision in 8 U.S.C. § 1227(a)(2)(A)(i). *Id.* at 1149.

Similar to *Ocampo-Duran*, in *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1018–19 (9th Cir. 2006), the Court held that the petitioner who entered the United States illegally, was accepted into the Family Unity Program, and then adjusted his status to LPR, was "admitted in any status" for purposes of cancellation of removal under 8 U.S.C. § 1229b(a) when he was accepted into the Family Unity Program. Like the petitioner in *Ocampo-Duran*, Garcia-Quintero was never admitted as defined by 8 U.S.C. § 1101(a)(13). *Id.*

Although the cases cited by the government "embrace[] an alternative construction of the term [admitted]," they are consistent with our prior "recogni[tion] [of] section 101(a)(13)(A) as the primary, controlling definition of the statutory term." *Shivaraman*, 360 F.3d at 1148. When viewed together, the only principle gleaned from these cases is that in the absence of an admission as defined by 8 U.S.C. § 1101(a)(13), the date on which a alien adjusts from unlawful to lawful presence in the United States qualifies as the date of admission for purposes of removability for committing an aggravated felony or for cancellation of removal. In the sections of the INA at issue in these cases, an

individual's admission is simply a temporal reference point for the statute's substantive requirements: the commission of a crime, or 7 years of continuous presence, *since* admission. The terms "admission" and "admitted" in these sections are either unqualified or "in any status"; they do not appear in the same phrase with a separate reference to having adjusted status.

Because Negrete-Ramirez was admitted into the United States as defined by 8 U.S.C. § 1101(a)(13)(A), this specific statutory definition is not "plainly inapplicable" to her case. It was this fact in *Shivaraman*, 360 F.3d at 1148, that distinguished it from *Ocampo-Duran*, 254 F.3d at 1134–35, and led to a different outcome. "When a statute includes an explicit definition, we must follow that definition," *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (citations omitted), unless doing so is not possible in a particular context. In this case, the explicit statutory definition of "admitted" clearly applies. And the ultimate result of our holdings in *Garcia-Quintero*, 455 F.3d at 1018–19, and *Cuevas-Gaspar*, 430 F.3d at 1029, was to expand rather than contract the pool of individuals eligible for relief from removal provided by the INA. Our holding in Negrete-Ramirez's case will have the same result.

We note that the government also relies on BIA decisions. Because there is no ambiguity in the statutory text, we need not examine these agency decisions. *See, e.g., Barnhart*, 534 U.S. at 462.

## 2.  8 U.S.C. § 1101(a)(20): "Lawfully Admitted for Permanent Residence"

The second distinct phrase in the text of § 212(h) contains the statutorily defined term "lawfully admitted for permanent residence."  The term is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).  This term encompasses all LPRs, regardless of whether they obtained that status prior to or at the time they physically entered the United States or by adjusting their status while already living in the United States, like Negrete-Ramirez.

## 3.  Statutory Language of § 212(h) as a Whole

When reading the statutory language of § 212(h) — "previously been *admitted . . . as* an alien lawfully admitted for permanent residence" — against the  definitions section of the INA, the two terms qualify each other.   It is unambiguous that Congress defined the class of those who are barred from seeking a § 212(h) waiver as LPRs who obtained their status prior to or at the time they physically entered into the United States.  *Papazoglou*, 725 F.3d at 792–93; *Leiba*, 699 F.3d at 350–51; *Hanif*, 694 F.3d at 484–85; *Bracamontes*, 675 F.3d at 385–86; *Lanier*, 631 F.3d at 1366–67; *Martinez*, 519 F.3d at 546.   If the term "admitted" in the phrase "previously been admitted" included post-entry adjustment of status to an LPR, as proposed by the government, the first section of the statutory language, "an alien who has previously been admitted to the United States as," would be superfluous because the definition of "lawfully admitted for permanent residence" encompasses adjustment

of status. As such, the construction would run afoul of a basic principle of statutory interpretation that "legislative enactments should not be construed to render their provisions mere surplusage." *Sum*, 602 F.3d at 1097 (citation omitted). Had Congress intended the bar on eligibility to apply to all LPRs, it would have simply omitted this phrase. Furthermore, construing the statute to bar from eligibility only LPRs who entered into the United States in such status is bolstered by the "'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'" *Cuevas-Gaspar*, 430 F.3d at 1029 (quoting *I.N.S. v. Cardoza-Fonesca*, 480 U.S. 421, 449 (1987)).

Our sister Circuits have opined as to the rational explanations for why Congress might have chosen to limit the bar on eligibility for certain LPRs and not others. *See, e.g., Lanier*, 631 F.3d at 1367 n.4; *Martinez*, 519 F.3d at 545. Regardless of Congress's reasoning, such a distinction, arising from a plain language reading of the statute, does not lead to the type of result that permits invocation of the absurdity doctrine. The Supreme Court "rarely invokes [this ambiguity test] to override unambiguous legislation." *Barnhart*, 534 U.S. at 459. "'When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."'" *Id.* at 462 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). Accordingly, "[w]e will not alter the text in order to satisfy the policy preferences of the [agency]." *Id.*

IV.

Section 212(h) of the INA expressly incorporates the terms of art "admitted" and "lawfully admitted for permanent residence" as defined by 8 U.S.C. § 1101(a) (13) and (20).

Accordingly, the plain language of § 212(h) unambiguously demonstrates that Negrete-Ramirez's post-entry adjustment of status to an LPR after her admission to the United States as a visitor does not constitute an admission in the context of § 212(h). Only noncitizens who entered into the United States as LPRs are barred from eligibility to apply for the § 212(h) waiver. Negrete-Ramirez is not barred from applying for a § 212(h) waiver.

We grant the petition for review and remand this matter to the BIA with instructions to remand to the IJ so that Negrete-Ramirez may apply for relief under § 212(h).

**PETITION FOR REVIEW GRANTED. REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

BERZON, Circuit Judge, concurring:

Although I concur in the majority opinion, some comment on the Board of Immigration Appeals' ("BIA") precedential opinions affecting the interpretation of section 212(h) of Immigration and Nationalities Act ("INA") is in order. *See In re Rodriguez,* 25 I. & N. Dec. 784 (BIA 2012); *In re Alyazji*, 25 I. & N. Dec. 397 (BIA 2011); *In re Koljenovic*, 25 I & N Dec. 219 (BIA 2010); *In re Rosas-Ramirez*, 22 I. & N. Dec. 616 (BIA 1999).

The overall premise of those opinions is that the plain language approach to the incorporation of the definition of "admission" and "admitted" in INA section 101(a)(13) cannot suffice, both in general and with regard to the section 212(h)

waiver. The BIA stresses that the INA elsewhere provides for the assimilation of adjustment of status to admission,[1] and disregarding that assimilation leads to results that could not have been intended. *Alayzji*, in particular, maintains that a uniform interpretation of the term "admission" throughout the INA as including adjustment of status is essential to avoid inconsistent and arbitrary results. *See Alyazji*, 25 I. & N. Dec. at 402–04.

This point has considerable force, and I was initially inclined to defer to it, as an acceptable interpretation of the INA as a whole and therefore of the section 212(h) waiver. On reflection, however — and given the uniform holdings to the contrary of every federal Court of Appeals that has addressed the question — I am persuaded by the majority's overall approach, which I take to be essentially this:

We must apply a plain words interpretation to the statutory definition of "admission" and "admitted" in the INA when we can sensibly do so. In this case, the juxtaposition of the statutorily defined term, "admitted," INA § 101(a)(13), with a second such term, "lawfully admitted for permanent residence," *id.* § 101(a)(20), particularly requires a plain words approach to the first term; otherwise, the term "admitted" would be redundant of the second phrase. In

---

[1] *See, e.g.*, INA § 101(a)(20) (designating those who have adjusted status as having been "lawfully *admitted* for permanent residence") (emphasis added); *id*. §§ 245(a), (i) (authorizing the Attorney General to adjust the status of certain aliens "to that of an alien lawfully *admitted* for permanent residence" as long as they are "*admissible*" or have received a waiver of inadmissibility) (emphasis added); *id*. § 245(b) (requiring the Attorney General, having adjusted an alien's status to that of a permanent resident, to "record the alien's lawful *admission* for permanent residence as of the date" of adjustment) (emphasis added); *id*. § 240A(b)(3) (same).

some instances, however, such as where there has been *no* admission of the sort contemplated by the statute, yet the context requires some trigger date by which to measure a later event, or where the result of treating an adjustment of status as if there had been no admission would be absurd, adjustment of status must be treated as admission. *See* Maj. Op. at pp. 10–11.

This nuanced approach now seems to me more faithful to the appropriate division of responsibility between Congress and administrative agencies, and between such agencies and the courts, embodied in *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), and its progeny, than the BIA's insistence on abandoning the plain language *throughout* the INA with regard to the terms "admitted" and "admission," so as to avoid a context-specific approach in those circumstances in which the statutory definition simply will not work. Put another way, although the BIA's insistence on uniformity is perhaps a more orderly answer — in the sense of assuring consistency and limiting interpretive discretion — allowing the agency and courts to substitute for a definition that *is* in the statute one that is not, even when the statutory definition is perfectly coherent given the context and other features of the text, goes beyond the agency's authority and, derivatively, ours. As the opinion does not insist on a literal interpretation of "admission" where these conditions are not met, and where the statutory assimilation of adjustment to admission therefore works better, I accept its reasoning.

It is also worth pointing out that some of the anomalies that the BIA's cases suggest arise unless adjustment of status is considered admission for all INA purposes do not, in fact, exist.

For example, *Alyazji* suggests that if an adjustment of status does not constitute an admission, many immigrants who currently seek waivers under section 212(h) would no longer be eligible to do so. *See Alyazji*, 25 I. & N. Dec. at 403. *Alyazji* points out that section 212(h)(1)(B) "permit[s] the Attorney General to waive the application of various grounds of inadmissibility if a 'denial of admission' . . . would result in extreme hardship to the alien's close relatives in the United States." *Id.* The BIA contends that as a result,

> if adjustment of status is *not* an "admission" for previously admitted aliens, . . . then such aliens would seem to be ineligible for waivers in the adjustment context, since any prospective hardship befalling their family members would no longer be attributable to a denial or refusal of "admission." Meanwhile, aliens who seek adjustment after having entered the United States *unlawfully* would remain eligible for waivers because, for them, adjustment of status would still be an admission.

*Id*. (emphasis in original).

The BIA's concern is unjustified. Section 212(h) applies only to aliens who are "inadmissible" or "ineligible to receive visas" due to criminal activity. *See* INA § 212(a)(2). To be eligible for adjustment of status, an alien must ordinarily be admissible, and must receive a visa. *See, e.g.*, *id*. § 245(a). And any ambiguity that may be created by reference to "the alien's denial of admission[,]" *id*. § 212(h)(1)(B), in the waiver section is cleared up (1) by the reference to "an alien lawfully admitted for permanent residence" in the same

sentence as eligible for a waiver — defined in section 101(a)(20) as a *status* separate from actual admission at the border; and (2) the explicit permission in the next sentence to the Attorney General to consent to "admission to the United States, *or adjustment of status*[,]" *id*. § 212(h)(2) (emphasis added). Indeed, the inclusion of both terms, separately, within section 212(h)(2) belies the notion that the first, admission, *always* includes the second, adjustment, and indicates, instead, that it at least sometimes does not.

*Koljenovic* similarly asserts that if adjustment of status is not treated as an "admission," an alien who enters without inspection and later adjusts status "would be in the absurd position of being a lawful permanent resident without ever having been 'admitted' in that status and thus could be subject to inadmissibility under section 212(a)(6)(A)(i) of the Act[,]" *Koljenovic*, 25 I. & N. Dec. at 222, as an "alien present in the United States without being admitted or paroled," INA § 212(a)(6)(A)(i). Thus, "many lawful permanent residents would be considered inadmissible, despite their lawful status, based on their presence in the United States without having been admitted." *Alyazji*, 25 I. & N. Dec. at 399. But individuals whose status has been adjusted are assigned a *constructive* date of lawful admission for permanent residence. *See* INA § 245(b). And section 237(a)(1)(A) explicitly treats as deportable an alien inadmissible "at the time of entry *or* adjustment of status," clearing up any ambiguity about whether aliens who have adjusted status are to be treated as if they were at the border seeking admission for purposes of the removal statutes. *Id*. § 237(a)(1)(A) (emphasis added). So, once again, where a literal interpretation of "admission" might lead to absurdities, the statute mentions "adjustment" specifically, and so signals that in the particular context, adjustment is to be assimilated

to adjustment.  *See also Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001) (rejecting as an absurdity the argument that an alien who adjusted status was not removable as an "alien . . . convicted of an aggravated felony at any time after admission," INA § 237(a)(2)(A)(iii), "because he was never technically 'admitted' for purposes of the statute").

Finally, I disagree with the BIA that, under this Court's interpretation, an alien who adjusts status without having previously been admitted would be ineligible for cancellation of removal.  *See Alyazji*, 25 I. & N. Dec. at 399 n.2.  The Attorney General may cancel the removal of an alien who, inter alia, "has resided in the United States continuously for 7 years *after having been admitted in any status* . . . ."  INA § 240A(a)(2) (emphasis added).  The BIA suggests that if adjustment of status is not deemed an "admission," an alien who entered unlawfully before adjusting status would not meet the 7-year continuous residence requirement for cancellation.

Our interpretation does not require this result.  This is precisely the situation identified above: there has been no admission of the type envisioned by section 101(a)(13)(A), but the INA requires a trigger date by which to measure the 7 years of continuous residence.  In that context, the date of an adjustment of status may be used as a date of admission.

For these reasons, I find the majority's approach  more likely to lead to results consistent with Congress' overall intent in this complicated and oft-amended statute, and view the anomalies identified by the BIA as overblown.  I therefore concur.