**MAIMONIDES MEDICAL CENTER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 09–CV–3013 (ENV)(RER).**

United States District Court, E.D. New York.

Signed Sept. 9, 2014.

Filed Sept. 19, 2014.

Thomas D. Sykes, Gould & Ratner LLP, Chicago, IL, for Plaintiff.

Stephen Tancill Lyons, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM & ORDER

VITALIANO, District Judge.

On July 14, 2009, plaintiff Maimonides Medical Center ("MMC") commenced this action against defendant the United States of America to recover overpayments of Federal Insurance Contribution Act ("FICA") taxes. On September 8, 2010, the parties advised the Court that the action had settled, and on September 10, 2010 the case was discontinued, except as to the right to reopen if the settlement was not consummated. On October 1, 2013, the Court granted plaintiff's unopposed motion to reopen the case, and it was restored to the calendar of active cases. The parties, moreover, still agree that plaintiff is entitled to a refund for its overpayments of FICA taxes. They also still agree on the amount of that refund. The sole issue in dispute is the rate of interest that should be applied, pursuant to 26 U.S.C. § 6621(a)(1).[1] The government argues that plaintiff should receive the rate applicable to corporations receiving refunds in excess of $10,000. MMC rejoins that it is entitled to the higher rate of interest paid to non-corporate taxpayers. The parties now cross-move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, defendant's motion is granted in its entirety, and plaintiff's cross-motion is denied.

### Background

MMC is organized and operated as a domestic not-for-profit corporation under New York law. Joint Stipulation, Dkt. No. 29 ("Stip."), ¶ 1. It is exempt from federal income tax, pursuant to § 501, as a "[c]orporation [ ] ... organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes...." See Stip. ¶ 2; §§ 501(a), (c)(3). However, plaintiff pays other kinds of federal tax. In particular, as an employer, MMC is required to pay federal employment tax under FICA.

### Standard for Summary Judgment

Pursuant to Rule 56, a federal district court must grant summary judgment upon motion and finding, based on the pleadings, depositions, interrogatory answers, admissions, affidavits, and all other admissible evidence, including stipulations of fact, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

---

**1.** All section references in this Memorandum and Order are to the Internal Revenue Code, 26 U.S.C. (the "IRC" or "Code"), unless otherwise noted.

that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original); *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 90 (2d Cir.2002). Material facts are those which, given the substantive law, might affect the suit's outcome. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002). In so doing, the nonmoving party may not rely on conclusory allegations or speculation. *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir.2004) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998)); Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Thus, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005) (*quoting Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). Nonetheless, the nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir.1997).

*Discussion*

The dispute between MMC and the government centers on statutory construction: the meaning of the term "corporation" in § 6621(a)(1). More specifically, the parties disagree about whether the term includes not-for-profit organizations, like plaintiff, which are incorporated in that form under state law and are exempt from federal income tax.

Section 6621(a)(1) sets the interest rate that is applied to overpayments of federal taxes:

(a) General Rule.—

(1) Overpayment rate.—The overpayment rate established under this section shall be the sum of—

(A) the Federal short-term rate ..., plus

(B) 3 percentage points (2 percentage points in the case of a corporation).

To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

26 U.S.C. § 6621(a)(1). Stated in plainer English, according to the terms of § 6621(a)(1)(B), the interest rate for noncorporations is 3 points above the federal short-term rate ("FSR"), whereas the corporate rate is only 2 points above. In addition, if a corporation's overpayment of federal tax exceeds $10,000, t hen the corporate rate is only 0.5 points over FSR.[2]

---

**2.** Prior to 1994, there was only one rate for interest on overpayments, applicable to all taxpayers. Back then, § 6621(a)(1) read:

(a) General Rule.—

(1) Overpayment rate.—The overpayment rate established under this section shall be the sum of—
(A) the Federal short-term rate ..., plus
(B) 2 percentage points.

In determining the interest due to MMC for its overpayment of FICA taxes, the government applied the 0.5 percent rate. Plaintiff agrees that, if it were a "corporation" within the meaning of § 6621(a)(1), it would be subject to the 0.5 percent rate for overpayments exceeding $10,000. MMC, however, contends that it is not a "corporation," within the meaning of that section, and thus should have received interest at a rate of 3 points over FSR.

## I. *MMC is a "Corporation" For Purposes of the IRC*

### A. *Definitional Provisions and the Check–The–Box Regulations*

The Court's analysis must begin by identifying the relevant definitional provisions of the IRC, and their related implementing regulations.

#### 1) *Section 7701*

Section 7701(a) sets out the definition of certain terms for purposes of the IRC. These definitions are to be used throughout the Code, unless a term is "otherwise distinctly expressed" in a particular sec-

In 1994, § 6621 was amended to implement the Uruguay Round trade agreements concerning the GATT tariff regime. The amendment reduced the interest rate on certain corporate tax overpayments. *See* Uruguay Round Agreements Act, Pub.L. No. 103465, § 713(b), 108 Stat. 4809, 5002 (1994). The amendment took the form of a sentence added to the end of § 6621(a)(1)(B). Congress's stated reason for the addition of the flush language following § 6621(a)(1)(B) was that "[d]istortions may result if the rates of interest in the Code differ appreciably from market rates[, and r]educing the overpayment rate for large corporate overpayments of taxes will reduce the possibility of distortions." H. Rept. 103–826 (Pt. 1), at 178 (1994), 1995–1 C.B. 250, 254. As amended, § 6621(a)(1) read as follows:

(a) General Rule.-

(1) Overpayment rate.-The overpayment rate established under this section shall be the sum of-

tion, or, using the § 7701(a) definition would be "manifestly incompatible with the intent" of a specific IRC provision. Section 7701(a)(1)-(3) provides the definitions of various types of entities:

(1) Person.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

(2) Partnership and partner.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation . . . .

(3) Corporation. The term "corporation" includes associations, joint-stock companies, and insurance companies.

§ 7701(a)(1)-(3).

"As an examination of these provisions reveals, the categories are overlapping and somewhat ambiguous[.]" *McNamee v. Dep't of the Treasury*, 488 F.3d 100, 106

(A) the Federal short-term rate . . . , plus

(B) 2 percentage points.

To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

In 1998, Congress amended § 6621 again. The purpose of the amendment was to equalize the interest rates on overpayments and underpayments for non-corporations. To accomplish this purpose, Congress increased the "overpayment rate payable to taxpayers other than corporations" from 2 percentage points to 3 percentage points. After the 1998 amendment, § 6621(a)(1) took its current form.

(2d Cir.2007). With respect to the statutory definition of a "corporation", courts have noted that "Congress has effectively conferred responsibility for further defining the term [ ] to the IRS" by including the word "association[ ]" in the definition, which does not have a precise meaning. *Yamagata v. United States,* 114 Fed. Cl. 159, 169–70 (Fed.Cl.2014). It is also worth observing that, by statute, no incorporated organization may be considered a partnership for federal tax purposes. *See* 26 U.S.C. § 7701(a)(2).

### 2) Check–The–Box Regulations

Against the "ambiguous statutory background" of § 7701(a), the IRS promulgated the so-called "check-the-box regulations," interpreting § 7701(a)(2)-(3). *McNamee,* 488 F.3d at 107. The purpose of the regulations was to provide straightforward guidance as to how various types of entities are classified for federal tax purposes. 26 C.F.R. § 301.7701–1(a)(1); see also *McNamee,* 488 F.3d at 107. Under the regulatory framework set out in the check-the-box regulations, the first question, in determining how to classify an entity for federal tax purposes, is whether a distinct, taxable entity (*i.e.,* a "separate entity") exists.[3] "A joint venture or other contractual arrangement may create a separate entity for federal tax purposes if the participants carry on a trade, business, financial operation, or venture and divide the profits therefrom." 26 C.F.R. § 301.7701–1(a)(2). If a separate entity exists, the next question is whether a section of the IRC "provides for special treatment of that organization." *Id.* § 301.7701–1(b). Further, distinct, taxable entities, for which the IRC does not provide "special treatment," are classified as either "business entities," subject to the rules of § 301.7701–2, 3, or "trust[s]," sub-

ject to the rules of 301.7701–4. *Id.* § 301.7701–2(a).

All business entities with two or more members are classified as either corporations or partnerships. *Id.* However, certain business entities with two or more members *must* be classified as corporations for federal tax purposes. *Id.* § 301.7701–2(b). Such entities include, "business entit[ies] organized under a Federal or State statute ... if the statute describes or refers to the entity as incorporated or as a corporation, body corporate or body politic." *Id.* § 301.7701–2(b)(1). On the other hand, a business entity with at least two members, which is not required to be classified as a corporation, is considered an "eligible entity" and can elect its classification "as either an association (and thus a corporation under § 301.7701–2(b)(2)) or a partnership." *Id.* § 301.7701–3(a). The rules for electing to be classified as either an association (and, consequently, a corporation) or a partnership are laid out in § 301.7701–3. *Id.* § 301.7701–3.

Section 301.7701–3 also covers "[d]eemed elections." "Deemed elections" status applies to certain organizations that the IRS deems to have elected corporate treatment because of other choices the organization has made about its federal taxes. *Id.* § 301.7701–3(c)(1)(v)(A)-(C). Subsection (c)(1)(v)(A) specifically covers the "[d]eemed elections" of "[e]xempt organizations." *Id.* § 301.7701–3(c)(1)(v)(A)(C). "An eligible entity that has been determined to be ... exempt from taxation under section 501(a) is treated as having made an election under this section to be classified as an association," and correspondingly a corporation, under § 301.7701–2(b)(2), for federal tax purposes. *Id.* § 301.7701–3(c)(1)(v)(A). Further, the deemed election to be treated as

---

**3.** The parties do not dispute that MMC is a

"separate entity" for federal tax purposes.

a corporation, by an organization that is exempt from federal income tax under § 501(a), lasts as long as the organization maintains its tax exempt status. *Id.*

### B. *Plaintiff is a Corporation Under § 7701(a)(3) and Check–The–Box*

■ In the face of this dense regulatory thicket, plaintiff asserts that it is not a corporation within the meaning of § 7701(a)(3) and the check-the-box regulations. Pl. Mem. at 17–18. The Court disagrees.

Pursuant to the Code's entity classification rules, there are three options relating to how, as a "separate entity," MMC may be classified: (1) as an entity that receives "special treatment" under a provision of the IRC; (2) as a "business entity," subject to the classification rules of §§ 301.7701–2, 3; or (3) as a "trust." *See* 26 C.F.R. §§ 301.7701–1(b), 2(a). Since neither party contends that MMC is a trust, MMC's status must be either an entity that receives "special treatment," or a "business entity."

Seeking to avoid classification as a "business entity" (a prerequisite to corporate classification under check-the-box), MMC

argues that it should be considered an entity that receives "special treatment" because "[a] n income-tax exemption is the ultimate in 'special treatment' " under the Code. Pl. Mem. at 18. Contrary to plaintiff's assertion, however, there is no indication that an exemption from income tax under § 501 qualifies as "special treatment" within the meaning of the check-the-box regulations. Rather it appears that just the opposite is true. Section 301.7701–1(b), the IRC provides an example of a statute that affords the "special treatment" of an organization. That statute includes a "[§ ]860A addressing Real Estate Mortgage Investment Conduits (REMICs)," which specifically provides that "a REMIC . . . shall not be treated as a corporation, partnership or trust[ ]." § 860A. In contrast, § 501 provides for no such special treatment in terms of entity classification.[4] In fact, § 501 specifically applies to "[c]orporations" that are organized and operated exclusively for a qualifying purpose. § 501(c)(3). In sum, an exemption from federal income tax, while arguably "special," is simply not akin to the treatment of an entity as special and distinct for classification purposes.[5]

---

4. Section 501(a) states that organizations described in § 501(c)(3) are exempt from federal income tax. Section 501(c)(3) includes "[c]orporations, and any community chest, fund or foundation," which are "organized and operated exclusively for religious, charitable, scientific, [or other qualifying purposes]." Section 501(b) clarifies that organizations exempt from federal income tax may still have to pay tax on income that is unrelated to their religious, charitable, scientific or other qualifying purpose. As Justice Scalia has noted, "Congress has explicitly defined the requirements for § 501(c)(3) status" "with undeniable clarity." *Bob Jones Univ. v. United States*, 461 U.S. 574, 613, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (Scalia, J. dissenting). "An entity must be (1) a corporation, or community chest, fund, or foundation, (2) organized for one of the eight enumerated pur-

poses, (3) operated on a nonprofit basis, and (4) free from involvement in lobbying activities and political campaigns." *Id.* Moreover, as both the statute, and Justice Scalia's summary of its requirements make clear, § 501(c)(3) is not a separate entity classification, but rather an advantageous income tax-exempt *"status"* that certain kinds of entities can acquire, if they meet specific requirements. *Id.* (emphasis added).

5. It appears that the only court that has considered the meaning of "special treatment" under § 301.7701 is *Uniband, Inc. v. C.I.R.*, 140 T.C. 230 (2013). That court declined to determine whether an Indian tribe was an organization for which the Code provides "special treatment" within the meaning of § 301.7701–1(b), since addressing the issue was not necessary to the court's resolution of the parties' dispute. *Id.* at 265 n. 28.

Since it is neither a trust nor an entity that receives "special treatment," MMC is a "business entity." Notwithstanding, MMC argues that it cannot be classified as a "business entity" because "[h]istorically, the term 'business' has been associated with for-profit activities." Pl. Mem. at 17. Yet, not only does MMC fail to cite any relevant precedent for this "historically"-based claim, such an interpretation would be contrary to the plain meaning of the check-the-box regulations. Notably, the IRS specifically addresses the classification of § 501 tax-exempt organizations in § 301.7701–3, which deals with a subset of "business entities" that are eligible to elect treatment as either a corporation or partnership. 26 C.F.R. § 301.7701–3(c)(1)(v)(A). The discussion of § 501 tax-exempt organizations as "eligible entities," a subset of "business entities," is a clear indication that the IRS had no intention of limiting the term "business entity" to for-profit enterprises, and the Court is not moved by plaintiffs unsupported assertions otherwise.[6] MMC is a "business entity" within the meaning of the check-the-box regulations.

◼ As noted earlier, certain business entities *must* be classified as corporations, while others, called "eligible entities", can elect treatment as either a corporation or a partnership. *Id.* § 301.7701–2(a). As a consequence, the next fork in the regulatory road is the question of whether MMC, as a "business entity" that is "incorporated" "under a . . . State statute," *must* be classified as a corporation, *see id.* § 301.7701–2(b)(1), or whether it is an "eligible entity" that can *elect* its classification as either an association (and thus a corporation under § 301.7701–2(b)(2)) or a part-

nership, *see id.* § 301.7701–3(a). Happily, for simplicity's sake, in this case both paths lead to the same destination. MMC is either a corporation because its status as a not-for-profit corporation under New York law mandates that it is, or, because it is a § 501 tax-exempt entity that is deemed to have elected treatment as a corporation. *Id.* §§ 301.7701–2(b)(1), 301.7701–3(c)(1)(v)(A), 301.7701–2(b)(2).

Although it is not necessary for the Court to decide whether MMC *must* be treated as a corporation pursuant to § 301.7701–2(b)(1), or whether it is deemed to have elected corporate treatment pursuant to §§ 301.7701–3(c)(1)(v)(A) and 301.7701–2(b)(2), it is worth observing that the government appears to be correct that, as an entity incorporated under state law, plaintiff is properly classified as a corporation under § 301.7701–2(b)(1). A straightforward reading of the check-the-box regulations dictates this result, and MMC cites no precedent to rebut it. Furthermore, the government presses that plaintiff *must* be a corporation pursuant to § 301.7701–2(b)(1) because any regulation which attempted to classify an organization incorporated under state law as anything other than a corporation would be struck down as inconsistent with the statutory language of § 7701(a)(3), itself. Def. Mem. at 9–10; *see also* Def. Rep. Mem. at 9.

Indeed, there is some precedent for this view—that the language of § 7701(a)(3) *requires* all incorporated entities to be classified as "corporations" for federal tax purposes. In 1960, the IRS promulgated the so-called "Kintner regulations." These regulations were the predecessor of the current check-the-box regulations, and

---

**6.** The Court also notes that, as the discussion of organizations with § 501(a) status in § 301.7701–3(c)(1)(v)(A) makes clear, plaintiff's contention that "[n]othing" in the check-

the-box regulations indicates that they were meant to apply to tax-exempt organizations, is, quite simply, patently incorrect.

were in effect from 1960 until they were replaced by the updated check-the-box regulations in 1997. The Kintner regulations, like check-the-box, interpreted §§ 7701(a)(2)-(3). However, included in the original version of Kintner was a section providing that professional business organizations, incorporated under state law, were not necessarily corporations for federal tax purposes.[7] Several courts held that this provision was invalid because it contradicted the plain meaning of § 7701(a)(3). *See, e.g., O'Neill v. United States*, 22 Ohio Misc. 212, 410 F.2d 888 (6th Cir.1969); *Kurzner v. United States*, 413 F.2d 97 (5th Cir.1969). In *O'Neill*, the "central question" before the Sixth Circuit was "whether a professional business organization which is a corporation under state law is a corporation for federal tax purposes within the meaning of [ ] § 7701(a)(3)" 410 F.2d at 888. The court of appeals noted that "not until the 1960 promulgation of [the Kintner regulations] was there any indication that a state created corporate entity might not be a corporation under [ ] § 7701(a)(3)." It held that the provision governing professional business corporations was "plainly [ ] inconsistent with [§ 7701(a)(3) ]," which section, according to the Sixth Circuit, evinced Congress's clear intent "that corporations as created under state law be corporations for federal tax purposes." *Id.* at 894–95; *see also* Victor E. Fleischer, *"If It Looks Like A Duck": Corporate Resemblance and Check–the–Box Elective Tax Classification*, 96 Colum. L.Rev. 518, 523–24 (1996) ("The Code's definition of a corporation has not changed since 1918. Domestic entities incorporated under state law are considered corporations *per se*. In addition, § 7701(a)(3) states that '[t]he term corporation includes associations, joint-

stock companies, and insurance companies.' ").

Other courts have also noted that the purpose of the IRS promulgating regulations to interpret §§ 7701(a)(2)-(3) was the classification of *unincorporated* entities—implying that the statutory language itself made clear how *incorporated* entities should be classified. *See, e.g., Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007) (stating that the Kintner regulations were "developed to aid in classifying business associations that were not incorporated under state incorporation statutes but that had certain characteristics common to corporations and were thus subject to taxation as corporations under the federal tax code").

Framed in this precedential light, the Court concludes that MMC is a corporation within the meaning of § 7701(a)(3), as interpreted by the check-the-box regulations.

## II. *MMC is Subject to the Corporate Interest Rate in § 6621(a)(1)*

█ Having determined that MMC is a corporation for federal tax purposes under § 7701(a)(3), the Court must now address the question of whether it is also a corporation within the meaning of § 6621(a)(1). MMC contends that the term "corporation," as it is used in § 6621(a)(1), is "naturally understood as referring to a for-profit entity" Since "traditional rules of construction ... supply the definition and the statutory meaning," MMC postulates, there is no need to apply the general definition of corporation found in § 7701(a)(3). Pl. Mem. at 6. The government argues that the meaning of "corporation" in

---

**7.** Whether professional business organizations were corporations for federal tax purposes depended upon whether they had "sufficient corporate characteristics," as defined by the IRS.

§ 6621(a)(1) should be determined by applying § 7701(a)(3)'s general definition.

■■■ Circuit law, and the cannons of construction, counsel that statutory interpretation begins with an examination of the plain language to be construed. *See Hedges v. Obama,* 724 F.3d 170, 189 (2d Cir.2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1936, 188 L.Ed.2d 960 (2014). Where the language is unambiguous, the interpretive process also ends there. *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Robinson,* 702 F.3d 22, 31 (2d Cir.2012) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 133 S.Ct. 1481, 185 L.Ed.2d 381 (2013). Further, "in general, statutory definitions control the meaning of statutory words...." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,* 756 F.3d 73, 87–88 (2d Cir.2014) (internal quotation marks and alterations omitted). "W hen a statute includes an explicit definition, we must follow that definition, unless doing so is not possible in a particular context." *Negrete–Ramirez v. Holder,* 741 F.3d 1047, 1053 (9th Cir.2014) (internal citation and quotation marks omitted); *see also Util. Air Regulatory Grp. v. E.P.A.,* —— U.S. ——, 134 S.Ct. 2427, 2441, 189 L.Ed.2d 372 (2014); *Bond v. United States,* —— U.S. ——, 134 S.Ct. 2077, 2096, 189 L.Ed.2d 1 (2014) (Scalia, J., concurring).

Here, neither the text of § 6621 nor the regulations interpreting that provision, offer a definition of "corporation" specific to that section. *See* § 6621; 26 C.F.R. §§ 301.6621–1–3. However, there is a general statutory definition, which, as interpreted by valid implementing regulations, clearly defines the term "corporation" to include entities like MMC. Because nothing in the language of § 6621(a)(1), or the context in which the term "corporation" is used in that section, militates against the application of the general statutory definition, the statutory definition must be applied. *Negrete–Ramirez,* 741 F.3d at 1053; *Bond,* 134 S.Ct. at 2096; *see also United States v. Hendrickson,* 664 F.Supp.2d 793, 813–14 (E.D.Mich.2009). As a result, MMC is a "corporation" within the meaning of § 6621(a)(1).

Plaintiff's arguments urging a different conclusion are not persuasive. First, MMC contends that, in contrast to its position in the instant case, the IRS has previously concluded that not-for-profit corporations should not be treated as corporations for purposes of § 6621(a)(1). Pl. Mem. at 18. To support this contention, plaintiff cites to the IRS's Internal Revenue Manual ("IRM"), which defines a "corporation," for § 6621(a)(1) purposes, according to the tax form the organization files.[8] Plaintiff seeks to bolster this contention on the ground that, in 2012 and 2013, the IRS, it asserts, actually issued refunds to not-for-profit corporations using § 6621(a)(1)'s non-corporate interest rate. Pl. Mem. at 18; Pl. Rep. Mem. at 14.

---

**8.** According to the terms of IRM § 6621(a)(1), a corporation is "any BMF taxable entity with at least one of the following significant filing requirements: Form 990–C, Return of Organization Exempt From Income Tax[;] Form 990–T, Exempt Organization Business Income Tax Return (and proxy tax under section 6033(e)), with Org. Code 4 or 5[; and] Form 1120 with Doc. Code other than 16 (i.e., Form 1120S)." Internal Revenue Manual 20.2.4.9(2) (Sept. 3, 2010), *available at* http://www.irs.gov/irm/part20/irm_20–002–004.html.

Pursuant to § 6110(k)(3), pointedly, the IRM cannot be used or cited as precedent. Moreover, the Supreme Court has held that "neither an unreasoned statement in the [the IRM] nor allegedly longstanding [IRS] practice can trump a formal regulation with the procedural history necessary to take on the force of law." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004). In other words, nothing in the IRM can trump the classification of MMC as a "corporation" under § 7701(a)(3) and check-the-box. In any event, the IRM makes clear that an organization filing a "Form 990–T" is a corporation for purposes of § 6621(a)(1), which plaintiff admits is that it filed in all relevant tax periods. Joint Supplemental Stipulation, Dkt. No. 30 ("Supp. Stip."), ¶ 12, Ex. 4. Thus, even under the terms of the IRM, MMC is subject to § 6621(a)(1)'s corporate interest rate. What is more, there is no evidence in the record, apart from the unsworn or affirmed statement of plaintiffs counsel, that the IRS has ever applied· the non-corporate interest rate in § 6621(a)(1) to the tax refund of any not-for-profit corporation,[9] not that the IRS would be forced to follow such prior contrary interpretation even if it had. *Cent. Laborers' Pension Fund,* 541 U.S. at 748, 124 S.Ct. 2230.

Next, plaintiff makes the argument that the check-the-box regulations are not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def.·Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and that it would be improper to apply them to § 6621(a)(1) under *Chevron,* because they do not contain a "discussion of [ ] interest-related issues." Pl. Mem. at 20. This critique misses its mark. The check-the box-regulations do not purport to interpret § 6621(a)(1); rather, they are the IRS's interpretation of the Code's definitional provisions—specifically, §§ 7701(a)(2)-(3). With this point of origination, the relevant inquiry is whether the check-the-box regulations are a reasonable interpretation of the statutory language in §§ 7701(a)(2)-(3). It appears that this is the issue plaintiff attempts to raise in its reply brief. *See* Pl. Rep. Mem. at 19–24. However, since "[a]rguments may not be made for the first time in a reply brief," the Court declines to address it.[10] *Singh v. Holder,* 473 Fed.Appx. 60, 61 (2d Cir. 2012) (summary order) (quoting *Knipe v.*

---

**9.** The Court is aware of one instance in which an entity, incorporated under state law as a not-for-profit corporation, was given a tax refund at the non-corporate rate. *See* P.L.R. 200126032 (June 29, 2001). However, in that case, the IRS determined that the entity was "an integral part of the state," which, pursuant to the check-the-box regulations, cannot be a "separate entity" for federal tax purposes, and, therefore, cannot be a "corporation." 26 C.F.R. § 301.7701–1(a)(3). The IRS's exception for the not-for-profit corporation in P.L.R. 200126032 is entirely consistent with its position that § 7701(a)(3) and the check-the-box regulations should govern the meaning of "corporation" in § 6621(a)(1).

**10.** The Court also notes that the Second Circuit has upheld the validity of the check-the-box regulations with respect to their classification of single-member limited liability companies ("LLCs"). *See McNamee v. Dept. of the Treasury,* 488 F.3d 100 (2d Cir.2007). Other courts addressing the same issue have agreed. *See Littriello v. United States,* 484 F.3d 372 (6th Cir.2007); *Kandi v. United States,* No. C05–0840C, 2006 WL 83463 (W.D.Wash. Jan. 11, 2006), *aff'd,* 295 Fed. Appx. 873 (9th Cir.2008);·*Stearn & Co., LLC v. United States,* 499 F.Supp.2d 899 (E.D.Mich.2007); *L & L Holding Co. v. United States,* Nos. 05–0794–A, 05–0817–A, 2008 WL 1908840 (W.D.La. Apr.·30, 2008); *Med. Practice Solutions, LLC v. Comm'r,* 132 T.C. No. 7 (2009), *aff'd sub nom. Britton v. Shulman,* No. 09–1994, 2010 WL 3565790 (1st Cir. Aug. 24, 2010); *see also Markell Co., Inc. v. C.I.R.,* 107 T.C.M. (CCH) 1447, 1447 n. 12 (T.C.2014). To the extent the Court were to consider this point, the litigation terrain for MMC would, at best, be foreboding.

*Skinner,* 999 F.2d 708, 711 (2d Cir.1993)) (internal quotation marks omitted).

 In sum, MMC makes a compelling case that such well-purposed institutions like MMC should have the benefit of the most advantageous interest rate, and the Congress could so provide. But, it has not. The Court concludes that the general definition of corporation in § 7701(a)(3) should be applied to the term "corporation" as it is used in § 6621(a)(1), which, in turn, means that income tax-exempt not-for-profit corporations like plaintiff are subject to § 6621(a)(1)'s corporate interest rate. Since the parties agree that the overpayments at issue were in excess of $10,000, the government correctly applied the corporate interest rate of 0.5 points above FSR to MMC's overpayment of FICA taxes.[11] *See* § 6621(a)(1).

*Conclusion*

In line with the foregoing, the government's motion for summary judgment on the issue of the appropriate rate of interest on the tax refund owed plaintiff is granted and plaintiffs cross-motion for summary judgment is denied.

The Clerk of Court is directed to enter this order on the docket and to return this case, which was settled in accordance with the prior stipulation of the parties, on the docket of closed cases.

SO ORDERED.

11. Although the construction of § 6621(a)(1), as it applies to not-for-profit corporations, appears to be an issue of first impression, in *Garwood Irrigation Co. v. C.I.R.,* 126 T.C. 233 (2006), the Tax Court considered a similar and somewhat related issue: whether the term "corporation," as it was used in § 6621(a)(1), encompasses "S corporations" or was intended by Congress to mean only "C corporations." The *Garwood* court concluded that the reference to subsection (c)(3) in the flush language following § 6621(a)(1)(B) meant that the term "corporation" in that sentence must be defined as "C corporation," and, thus, that the 0.5 percent rate applied only to C, but not S, corporations. However, since there was no similar reference to subsection (c)(3) in the § 6621(a)(1)(B) parenthetical, the court reasoned that the definition of the term "corporation" in that case should be determined by applying the general statutory definition from § 7701(a)(3). Consequently, the *Garwood* court concluded that the 2 percent corporate rate applied to both C and S corporations. For purposes of the instant case, because plaintiff explicitly states that it does not rely on *Garwood, see* Pl. Rep. Mem. at 6, and since this Court is not bound by the Tax Court's holding, there is no need for a comprehensive discussion of *Garwood* here. Notwithstanding, having reviewed the Tax Court's reasoning and its possible application to this case, the Court's analysis, as outlined above, remains the same. In any event, to the extent *Garwood* might suggest a contrary outcome, the Court declines to follow it.